ILANA DIAMOND ROVNER, Circuit Judge.
 

 CogniTest Corporation and its Israeli affiliate (collectively “CogniTest”) allege that the Riverside Publishing Company (“Riverside”) breached a contract under which Riverside had agreed to distribute CogniTest’s new computer software program. CogniTest sought to recover in excess of $30 million in damages for Riverside’s breach, which its complaint characterized as “lost profits.” On Riverside’s motion, the district court dismissed the complaint, finding that CogniTest was precluded from recovering these damages by a provision in the contract limiting the parties’ available remedies. The district court also refused CogniTest’s request for permission to amend its contract claims. CogniTest challenges those decisions in this appeal, but we agree with the district court and thus affirm its judgment.
 

 I.
 

 Because we are reviewing the dismissal of CogniTest’s complaint, we accept the complaint’s allegations as true.
 
 MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.,
 
 62 F.3d 967, 969 (7th Cir.1995). In August 1992, CogniTest and Riverside began discussing the possibility of a distribution relationship involving CogniTest’s new psychological software program. That software was designed by CogniTest for use by psychiatrists, psychologists, and other mental health professionals and their staffs, and was intended to aid these users in performing routine office tasks like scheduling and billing, and in administering and scoring common psychological tests. By late 1992, the parties’ discussions produced an oral agreement in principle under which Riverside agreed to serve as the exclusive distributor of Cogni-Test’s software in the United States and Canada. For the next ten months, the parties negotiated and prepared a formal written agreement, which they finally executed on October 21, 1993. During the ten-month negotiation period, the parties acted in accordance with their earlier oral understanding. CogniTest’s complaint alleges that the parties’ written contract fairly and accurately represented the terms and conditions of that oral agreement. Also during the ten-month negotiation period and at Riverside’s suggestion, CogniTest changed the name of its software program from “CogniTest Psychological Software” to “INvironment.”
 

 Under the October 21, 1993 contract, Cog-niTest agreed to develop the INvironment software program, and Riverside agreed to market it. Part of Riverside’s obligation was to use “reasonable commercial efforts to achieve maximum sales” of the program in the United States and Canada. The contract specified that Riverside would acquire no rights in the program or in CogniTest’s proprietary information, and that Riverside would refrain from marketing a competing software program during the contract’s initial eight-year term and during any of the successive five-year terms for which the contract could be automatically renewed. Yet if Riverside were to provide twelve months’ notice of its intent not to renew the contract,
 
 *-1089
 
 it could at that point commence to develop a competing software program.
 

 Riverside also had the option of terminating the contract prior to initial publication of the INvironment software if it determined “in its reasonable business judgment” that market conditions were not appropriate for introduction of the software. Riverside chose to exercise that option on July 14, 1994, four weeks prior to the scheduled launch or “initial publication” of the INvironment software at the annual meeting of the American Psychological Association (“APA”). Riverside notified CogniTest of its decision both by telephone and in writing. It explained that after evaluating the results of its market research, the company had determined that market conditions were not favorable for the introduction of the INvironment system in its current form. By that time, however, CogniTest had expended or obligated itself to expend $870,000 in the fulfillment of its contractual obligations. Included in that amount were employee salaries, rent, office expenses, the cost of computers and software, travel expenses, independent contractor fees, legal fees, accounting fees, and consultant fees. Of the $870,000 so expended, Riverside had advanced $160,000.
 

 CogniTest alleges that Riverside’s termination was wrongful and in breach of the agreement for several reasons. It maintains, for example, that to the extent Riverside may have made the business judgment that market conditions were not appropriate for the introduction of the INvironment software, that business judgment was not “reasonable” as required by the contract. CogniTest also alleges that Riverside’s stated reason for terminating the agreement was false and that it actually terminated the contract because it was in the process of developing a competing software program utilizing CogniTest’s proprietary information. Riverside’s breach, according to the complaint, resulted in damages to CogniTest of more than $30 million, representing the profits lost by CogniTest as a direct and proximate result of the breach.
 

 In moving to dismiss CogniTest’s breach of contract claims, Riverside argued that two provisions of the contract preclude recovery of the damages alleged. The first is paragraph 17.4.2(i), which Riverside labeled a liquidated damages clause:
 

 In the event that this Agreement is terminated by [Riverside] due to CogniTest’s breach prior to Initial Publication, Cogni-Test shall repay to [Riverside] any outstanding advances against future inventory purchases. In the event that this Agreement is terminated by [Riverside] prior to Initial Publication for any other reason, CogniTest shall retain all such outstanding advances.
 

 ■Riverside maintained that under this provision, CogniTest was entitled to and did retain the $160,000 it had advanced prior to terminating the contract. Riverside also pointed to paragraph 17.5, which limits CogniTest’s other remedies:
 

 Limitation on Remedies.
 
 In no event shall either party be liable for any lost profits, special, contingent, incidental, or consequential damages even if the other party knows or should have known of the possibility of such damages.
 

 This provision, according to Riverside, prevents CogniTest from recovering the lost profit damages alleged in its complaint.
 

 In dismissing the complaint, the district court found that CogniTest had failed to allege any damages that were not waived in the limitations clause. The court explained that under the terms of the parties’ agreement, CogniTest’s sole remedy was to retain the $160,000 advanced by Riverside prior to termination. The district court noted that there had been no suggestion that the above damage provisions were unenforceable, and that the complaint’s allegations established that those provisions were not unconscionable. The court later denied CogniTest permission to amend its contract claims because the terms of the agreement and plaintiffs original allegations established that Cogni-Test could not state a claim.
 
 [1]
 

 
 *-1088
 
 II.
 

 We review the district court’s decision to dismiss CogniTest’s complaint de novo, accepting as true the complaint’s well-pleaded factual allegations and drawing all reasonable inferences in CogniTest’s favor.
 
 Leatherman v. Tarrant County Narcotics Unit,
 
 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993);
 
 MCM Partners,
 
 62 F.3d at 972. Dismissal is appropriate only if it is clear that CogniTest could prove no set of facts in support of its contract claims that would entitle it to relief.
 
 See Conley v. Gibson,
 
 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957);
 
 Gould v. Artisoft, Inc.,
 
 1 F.3d 544, 548 (7th Cir.1993).
 

 As described above, the complaint alleges that Riverside’s termination just a month prior to the annual meeting of the APA was wrongful and in breach of the contract for several reasons. Riverside was authorized under paragraph 17.1.1(b) to terminate the contract prior to initial publication if in its reasonable business judgment market conditions were inappropriate for introduction of the INvironment software. Although Riverside invoked this provision in notifying Cog-niTest of its intention to terminate, the complaint alleges that the stated ground for terminating the agreement was false and that Riverside actually was planning to introduce a competing software program it had developed through the misappropriation of CogniTest’s proprietary information. We shall assume that CogniTest’s allegations sufficiently allege a breach of the parties’ agreement.
 

 The issue before us, then, is whether the contract entitles Riverside to recover any damages for the alleged breach. The complaint seeks damages of not less than $30 million, which the complaint characterizes as the profits lost by CogniTest as a direct and proximate result of the breach. But as the district court discerned, the contract limits the remedies available in the event of a breach, specifically precluding either party from recovering “any lost profits, special, contingent, incidental, or consequential damages,” even if those damages were foreseeable to the breaching party. (Agreement para. 17.5.) Thus, if that limitation provision is enforceable, it would preclude CogniTest from recovering any of the damages alleged in its complaint.
 

 A.
 

 The contract provides that it shall be governed by Illinois law, and we thus examine the validity of the limitation provision under that state’s law. As the district court observed, Illinois has adopted the Uniform Commercial Code’s rule that consequential damages such as lost profits may be limited or excluded by parties to a contract unless the limitation or exclusion is unconscionable. U.C.C. § 2-719(3), 810 ILCS 5/2-719(3);
 
 Cole Energy Dev. Co. v. Ingersoll-Rand Co.,
 
 8 F.3d 607, 611 (7th Cir.1993);
 
 Frank’s Maintenance & Eng’g, Inc. v. C.A Roberts Co.,
 
 86 Ill.App.3d 980, 42 Ill.Dec. 25, 31, 408 N.E.2d 403, 409 (1980). The complaint before us does not include an allegation of uneonscionability
 
 (cf. Pierson v. Dean, Witter, Reynolds, Inc.,
 
 742 F.2d 334, 339 (7th Cir.1984)), and the district court was therefore entitled to rely upon the limitation provision in concluding that the contract precludes recovery of the lost profit damages alleged.
 

 Although the U.C.C. permits parties to limit the remedies available in the event of a breach
 
 (e.g.,
 
 by precluding the recovery of consequential damages), it does require that there at least be a minimum adequate remedy for the victim of a breach. U.C.C. § 2-719, comment 1;
 
 Cole Energy Dev. Co.,
 
 8 F.3d at 611;
 
 AES Tech. Sys., Inc. v. Coherent Radiation,
 
 583 F.2d 933, 939 (7th Cir. 1978). Riverside takes the position that
 
 *-1087
 
 while the limitation of remedies provision precludes the recovery of lost profits, paragraph 17.4.2(i) provides CogniTest with a minimum adequate remedy. That paragraph provides that if Riverside should decide to terminate the agreement prior to initial publication for any reason other than Cogni-Test’s breach, CogniTest would be entitled to retain any amounts advanced by Riverside against future inventory purchases. If Riverside’s termination of the agreement prior to initial publication were occasioned by Cog-niTest’s breach, however, the contract would require CogniTest to return the advanced amounts.
 
 [2]
 
 Here, Riverside’s advances at the time of termination totaled $160,000, which CogniTest was able to retain when Riverside terminated the contract in the absence of a breach by CogniTest. We agree that Cogni-Test’s contractual right to retain those advances qualifies as a minimum adequate remedy under the U.C.C.
 

 The parties expressly contemplated when entering their agreement that Riverside may choose to terminate the contract prior to initial publication of the INvironment software. They further agreed that such a termination, even if in breach of the agreement, would not give rise to liability for “lost profits, special, contingent, incidental, or consequential damages.” (Agreement para. 17.5.) Rather, in allocating the risks of a pre-publi-cation termination, these sophisticated parties agreed that CogniTest would be entitled to retain all advances Riverside had been required to make against future inventory purchases. The amount of the advances depended on the number of development milestones CogniTest had been able to attain, but regardless of the amount, retention was the remedy to which the parties had agreed, and we think such a remedy was minimally adequate under the U.C.C.
 
 See, e.g., Canal Elec. Co. v. Westinghouse Elec. Co.,
 
 973 F.2d 988, 996-97 (1st Cir.1992);
 
 AES Tech. Sys.,
 
 583 F.2d at 941-42.
 

 B.
 

 CogniTest nonetheless argues that even if the provision limiting damages would preclude it from recovering lost profits, that provision would not bar the recovery of the $870,000 it expended prior to the breach. Citing
 
 American Elec. Power Co. v. Westinghouse Elec. Corp.,
 
 418 F.Supp. 435, 460 n. 44 (S.D.N.Y.1976), and
 
 Applied Data Processing, Inc. v. Burroughs Corp.,
 
 394 F.Supp. 504, 508 (D.Conn.1975), CogniTest contends that these damages do not qualify either as “lost profits, special, contingent, incidental, or consequential damages,” but instead are direct damages that it incurred prior to the breach in performing its obligations under the contract. Riverside does not join issue on the question of whether the $870,000 in out-of-pocket expenses is encompassed by the limitation provision but offers two alternate responses. First, it contends that Cog-niTest’s complaint seeks only to recover lost profits and makes no mention of these allegedly “direct damages.” Second, Riverside argues that CogniTest’s ability to retain advances against future inventory purchases under paragraph 17.4.2(i) is the exclusive remedy available to CogniTest in the event of a pre-publication breach.
 

 It is true, as Riverside observes, that Cog-niTest’s initial complaint seeks only to recover $30 million in lost profits, an amount that apparently does not include the $870,000 in out-of-pocket expenses. Yet the district court denied CogniTest’s request to file an amended complaint that would have included a prayer for these out-of-pocket costs.
 
 {See
 
 R. 41 at 20.) We shall therefore consider whether CogniTest could state a claim for the recovery of those damages. In doing so, we shall assume (along with Riverside) that the damages represented by the $870,000 are not encompassed by the limitation provision.
 

 Section 2-719(1) of the U.C.C. provides that parties to a contract may agree to limit the remedies available in the event of a breach, but that resort to the limited remedy is optional “unless the remedy is expressly agreed to be exclusive, in which case it is the
 
 *-1086
 
 sole remedy.” U.C.C. § 2-719(1), 810 ILCS 5/2-719(1). Riverside argues that Cogni-Test’s retention of the advanced amounts ($160,000) was its exclusive remedy in the event of a pre-publication breach. That is not immediately apparent from paragraph 17.4.2(i) itself, however, as that provision does not expressly provide that its remedy is exclusive. Yet the Illinois courts have not required such a provision to actually employ the word “exclusive.” Rather, Illinois looks to whether a reasonable construction of the contract indicates that the parties intended a limited remedy to be exclusive.
 
 E.g., Omnitrus Merging Corp. v. Illinois Tool Works, Inc.,
 
 256 Ill.App.3d 31, 195 Ill.Dec. 701, 704, 628 N.E.2d 1165, 1168 (1993);
 
 Veath v. Specialty Grains, Inc.,
 
 190 Ill.App.3d 787, 137 Ill.Dec. 892, 898, 546 N.E.2d 1005, 1011-12 (1989);
 
 J.D. Pavlak, Ltd. v. William Davies Co.,
 
 40 Ill.App.3d 1, 351 N.E.2d 243, 245 (1976);
 
 see also Dow Coming Corp. v. Capitol Aviation, Inc.,
 
 411 F.2d 622, 626 (7th Cir.1969). We think that is the case here.
 

 Paragraph 17.4.2(i) addresses the limited circumstance in which Riverside chooses to terminate the contract prior to initial publication either because CogniTest has breached the agreement or for any other reason. Thus, the paragraph necessarily addresses a situation like that alleged here where Riverside may have breached the contract by terminating it for an invalid reason. In that circumstance, paragraph 17.4.2(i) entitles CogniTest to retain Riverside’s outstanding advances, which it did. A separate paragraph of the agreement then precludes CogniTest from recovering a broad range of potential damages, including “lost profits, special, contingent, incidental, [and] consequential damages.” (Agreement para. 17.5.)
 
 [3]
 
 Finally, yet another paragraph indicates that the provisions of the parties’ written agreement constitute their entire agreement. (Agreement para. 22.3.) Reading these provisions together, we can only conclude that the remedies provided in paragraph 17.4.2(i) for a pre-publication breach were intended to be exclusive.
 

 Putting to one side any damages excluded by the limitation provision, it would appear that what CogniTest calls its “direct damages” (the amounts expended prior to the breach in reliance on the contract) would be the only possible type of non-excluded injury that could result from a pre-publication breach.
 
 [4]
 
 Yet because Riverside had an obligation under the contract to make advances against future inventory purchases, those out-of-pocket expenses were, to a certain extent, shared by the two parties. Moreover, their contract addressed in paragraph 17.4.2(i) what would happen to those advanced amounts in the event of a pre-publication breach. The parties agreed that if Cog-niTest were to breach the contract, causing Riverside to terminate prior to initial publication, the advanced amounts would be returned to Riverside. But CogniTest would be entitled to retain those advances if Riverside were to breach the contract. When this provision is considered against the broad provision limiting the parties’ available remedies and the contract’s integration clause, it can only be construed to mean; that the remedies provided for a pre-publication breach were intended to be exclusive. If that' were not the case, we would have expected the parties’ contract to have provided not only for the retention of Riverside’s advances, but also for the recovery of CogniTest’s out-of-pocket expenses.
 
 See Veath,
 
 137 Ill.Dec. at 898-99, 546 N.E.2d at 1011-12 (existence of integration clause supports conclusion that contractual remedy was intended to be exclusive);
 
 see also Dow Coming,
 
 411 F.2d at 626 (clear import of provision providing for full
 
 *-1085
 
 refund of deposit is that that remedy would be exclusive).
 

 C.
 

 Filially, CogniTest contends that it should have been permitted to amend its contract claims to allege that the damage limitation provision is unconscionable. Fed. R.Civ.P. 15(a) requires that a district judge provide a party with leave to amend its pleading “when justice so requires.” We have recognized, however, that leave may be denied “where there has been undue delay, dilatory motive on the part of the movant, repeated failure to cure previous deficiencies, and where amendment would be futile.”
 
 McGee v. Kerr-Hickman Chrysler Plymouth, Inc.,
 
 93 F.3d 380, 385 (7th Cir.1996). The district court refused to allow the amendment here because CogniTest had not initially suggested that any provision of the contract was unconscionable, and because the court believed that CogniTest also had originally alleged facts that would preclude it from succeeding on such a claim. We review the district court’s decision for an abuse of discretion.
 
 Id.
 

 [5]
 

 In assessing whether a contractual provision should be disregarded as unconscionable, Illinois courts look to the circumstances existing at the time of the contract’s formation, including the relative bargaining positions of the parties and whether the provision’s operation would result in unfair surprise.
 
 J.D. Pavlak,
 
 Ltd., 351 N.E.2d at 246;
 
 see also Smith v. Navistar Int’l Transp. Corp.,
 
 957 F.2d 1439, 1445 (7th Cir.1992);
 
 KKO, Inc. v. Honeywell, Inc.,
 
 517 F.Supp. 892, 899 (N.D.Ill.1981). Pursuant to CogniTest’s own allegations, the damage limitation provision here was included in a contract that two experienced commercial parties had negotiated over a period of ten months. CogniTest further alleged that the formal agreement the parties eventually executed “fairly and accurately” represented the terms and conditions of their earlier agreement in principle. Thus, based on CogniTest’s own allegations, it does not appear that the bargaining positions of the parties were such that Riverside could have forced the damage limitation provision on an unsuspecting adversary. In addition to that, section 2-719(3) and its commentary suggest that a limitation provision like this one would be unconscionable only if it would operate to deprive a party of a minimum adequate remedy (see I James J. White & Robert S. Summers,
 
 Uniform Commercial Code
 
 § 12-11, at 670 (4th ed. 1995)), and we concluded above that in light of the remedies provided for a pre-publication breach in paragraph 17.4.2(i), the damage limitation does not have that effect here. In the circumstances of this case, then, we do not believe that the district court abused its discretion in denying CogniTest leave to file an amended pleading that would assert for the first time that the damage limitation provision is unconscionable.
 

 AFFIRMED.
 

 [1]
 

 . CogniTest’s initial complaint included ten counts, four of which were variations on a standard breach of contract claim. The remaining counts alleged, among other things, a breach of fiduciary duty, unfair competition, and copyright infringement. The complaint also sought preliminary and permanent injunctive relief as well as specific performance of certain contractual obli
 
 *-1088
 
 gations. When it dismissed the four breach of contract counts, the district court also dismissed the remaining counts of CogniTest's complaint. Although it subsequently denied leave to amend the contract claims, the court permitted Cogni-Test to amend its unfair competition and copyright infringement claims, as well as one of its claims for injunctive relief. The district court eventually dismissed all but the amended copyright infringement claim, and CogniTest then agreed to also dismiss that claim with prejudice in order to take the instant appeal. CogniTest has limited its appeal, however, to the four contract claims and to the lower court’s refusal to allow an amendment of those claims.
 

 [2]
 

 . The contract requires Riverside to make such advances in accordance with a Development Schedule which links Riverside’s obligation to make an advance to CogniTest’s successful completion of a development milestone. (Agreement para. 7.1.5.) Thus, the more milestones completed, the more advances Riverside must make.
 

 [3]
 

 . CogniTest points to this limitation provision as support for its view that the parties did not intend paragraph 17.4.2(i) to provide an exclusive remedy. If that had been their intention, CogniTest contends, there would have been no need to also include the limitation provision. But that argument ignores the fact that paragraph 17.4.2(i) applies only in a limited circumstance — to a termination occurring prior to initial publication of the INvironment software, even if in breach of the agreement. The limitation provision, on the other hand, applies more broadly to any breach, including a pre-publication breach.
 

 [4]
 

 . We are not certain that these damages would not be encompassed by the limitation provision, but we assume they are not because Riverside has not suggested otherwise.
 

 [5]
 

 . In a footnote to its reply brief, CogniTest argues that leave of court to file its amended pleading was not required because it had an absolute right under Fed.RXiv.P. 15(a) to amend its pleading once "as a matter of course at any time before a responsive pleading is served.” (Cogni-Test Reply Br. at 13 n. 1.) Yet CogniTest did not invoke that right before the district court, nor did it do so here in its opening brief. Thus, the issue has been waived.
 
 See, e.g., Parrillo v. Commercial Union Ins. Co.,
 
 85 F.3d 1245, 1249-50 (7th Cir.1996).