**Pamela Jean TYLKA, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**GERBER PRODUCTS CO., a Michigan corporation, Defendant.**

No. 96 C 1647.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 28, 1998.

---

Michael Jerry Freed, Michael B. Hyman, Carol V. Gilden, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C., Marvin Alan Miller, Kenneth A. Wexler, Miller, Faucher, Cafferty and Wexler, L.L.P., Charles Robert Watkins, Robert Jerald Emanuel, Susman & Watkins, Alan M. Goldberg, Ben Barnow, Barnow and Goldberg, P.C., Chicago, IL, Lee Squitieri, Abbey, Gardy & Squitieri, L.L.P., Jonathan M. Plasse, Goodkind, Labaton, Rudoff & Sucharow, New York City, Roberta Liebenberg, Natalie A. Finkelman, Mager Liebenberg & White, Philadelphia, PA, Larry Daniel Drury, Larry D. Drury, Ltd., Chicago, IL, Christi C. Mobley, Martin D. Chitwood, Chitwood & Harley, Atlanta, GA, for Paula Tylka, individually and on behalf of all others similarly situated, Toni Cainkar, Celine White, H. Joshua Chaet, Cheryl Keller, Barbara F. Berg, Jeanette Deleon, individually and on behalf of all others similarly situated, Kazra Ahmad Sharif, plaintiffs.

Michael S. Poulos, Suzanne Robinson, Rudnick & Wolfe, Ted C. Tow, Matkov, Salzman, Madoff & Gunn, Wendy Lee Toolin, Dickinson Wright—Illinois, Chicago, IL,

Lawrence G. Campbell, Dickinson Wright PLLC, Detroit, MI, for Gerber Products Company, a Michigan corporation, Jess McDonald, Chief, DCFS, Anne Burke, Legal, Chris McGraff, Tim Snowden, Asst. Administrator, Wanda Boyd, Worker, Wes Gillespie, Worker, Georgina Horton, Worker, Patrice Nelson, Worker, Nefertiti Smith, Union President, Angie Smith, Union Steward, Greg Smith, Union Steward, defendants.

### OPINION and ORDER

NORGLE, District Judge.

Before the court is Plaintiffs' Motion for Approval of Form of Notice and Notice Plan in their class action against Defendant Gerber Products Company ("Gerber"). For the following reasons, Plaintiffs' motion is denied.

### I. Background

The facts and further procedural background of this case are recited in the court's opinion and order of March 3, 1998. *See Tylka v. Gerber Products Co.*, 178 F.R.D. 493 (N.D.Ill.1998). A brief summary follows.

On March 22, 1996, Plaintiffs (all citizens of Illinois) filed a complaint against Gerber. An amended complaint followed, alleging that Gerber (1) adulterated second-stage and third-stage baby food products with water, sugar, starches, or a combination thereof, and (2) used misleading advertising to promote the adulterated products. Plaintiffs filed Count I of the amended complaint pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 et seq., and Count II alleges common law fraud.

Plaintiffs then moved to certify a class comprised of all persons in the United States who purchased the above-mentioned products after February 16, 1993. The court denied the motion in part, holding that "individual issues of law predominate which preclude certification of a nationwide class seeking redress under the various states' consumer fraud statutes and common law fraud causes of action." *Tylka*, 178 F.R.D. at 498. Accordingly, the court certified the following class: "all representatives and putative class members who may properly avail

themselves of the ICFA, and Illinois common law fraud." *Id.* Plaintiffs now propose their plan for giving the class adequate notice pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 23(c)(2).

### II. Plaintiffs' Plan

Plaintiffs propose to notify potential class members in 31 states by publishing their notification in 800 newspapers around the country, in National Parenting magazines, on the PR Newswire (a newswire service), and on an Internet web site. In relevant part, the proposed notice states:

### NOTICE OF CLASS ACTION

TO: All persons who may properly avail themselves of the Illinois Consumer Fraud Act and Illinois common law fraud, including all persons who bought Gerber Second–Stage or Third–Stage Baby Food since February 16, 1993 in any of the following states: Alaska, Arizona, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Iowa, Kentucky, Louisiana, Maine, Massachusetts, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Rhode Island, South Carolina, Tennessee, Texas, Vermont, Washington, West Virginia and Wisconsin.

Your rights may be affected by a lawsuit, *Pamela Jean Tylka, et al., Plaintiffs, v. Gerber Products Company, Defendant, No. 96 C 1647 ("the Lawsuit")*, pending in the United States District Court for the Northern District of Illinois ("the Court").

### Nature of the Case and the Parties

Plaintiffs in the Lawsuit allege that Gerber adulterated its Second–Stage and Third–Stage Baby Food products with water, sugar, starches, or a combination of these items, and that Gerber used misleading advertising to promote its products. Plaintiffs seek money damages to compensate them for their loss, seek to stop further deceptive advertising, and seek to require Gerber to disclose accu-

rate information regarding its products. Gerber denies these allegations.

\* \* \* \* \* \*

### Class Action Ruling

On March 3, 1998, the Court ruled that the Lawsuit may be maintained as a Class Action on behalf of a class consisting of all persons who, since February 16, 1993, have purchased Gerber Second–Stage or Third–Stage Baby Food products adulterated with water, sugar and/or starches who may properly avail themselves of the Illinois Consumer Fraud Act and Illinois common law fraud. Under Illinois choice of law rules, persons who purchased Gerber Second–Stage and Third–Stage baby food in the 31 states listed above may avail themselves of the protections afforded by their state statutes prohibiting consumer fraud, and, therefore, are members of the Class.

\* \* \* \* \* \*

(Pls.' Mot., Ex. A.)

The notice then explains the class members' options and how members may exercise them.

### III. Discussion

■ Gerber contends that Plaintiffs' plan is overbroad and "[b]latantly ignor[es]" the court's March 3, 1998, opinion. (Def's Resp. at 2.) The court agrees.

The crucial defect with the plan is that it seeks to notify individuals throughout the United States. Plaintiffs defend the plan by arguing that individuals in the 31 states may "avail" themselves of the ICFA because it is substantially similar to the statutes of 30 other states. Plaintiffs are attempting to re-litigate the issue of the class's composition so as to allow for a large national action. However, the court previously decided that a large nationwide class is inappropriate, and rejects Plaintiffs' continuing attempt at het-erizing the certified class into a nationwide class. Nevertheless, the court recognizes that the class's composition must be clarified before members can be notified.

### 1. Class Composition—Who May Properly Avail Themselves of the ICFA?

■ In its March 3, 1998 decision, the court described the class in restrictive terms, noting the "limitation on the breadth of the class." *Tylka*, 178 F.R.D. at 498 (*citing Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir.1997); *Shvartsman v. Callahan*, No. 97 C 5229, 1997 WL 573404, at \*16 (N.D.Ill. Sept. 11, 1997); *Rembert v. Sheahan*, No. 92 C 0067, 1992 WL 253185, \*4–5 (N.D.Ill. Sept. 29, 1992)). Unlike Plaintiffs who seek an aggrandizement of the class, Gerber wants to minimize the class by limiting it to Illinois residents. With regard to the ICFA, there is some support for Gerber's position in this district; however, the courts in this district are not unanimous.

Courts in this district are split as to whether the ICFA may apply to consumers who are not citizens of Illinois. The dispute stems from conflicting interpretations of the ICFA. The first line of cases hold that only Illinois consumers have standing to assert ICFA claims. *See Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 339 (N.D.Ill.1997) (Aspen, J.) (*citing Endo v. Albertine*, No. 88 C 1815, 1995 WL 1790030, at \*6 (N.D.Ill. Apr. 7, 1995) (Holderman, J.); *Swartz v. Schaub*, 818 F.Supp. 1214,1214 (N.D.Ill.1993) (Shadur, J.)). The second line of cases permits the ICFA's application "to non-resident plaintiffs who are injured by deceptive acts perpetrated in Illinois." *See id.* (*citing Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, No. 92 C 2379, 1993 WL 239051, at \*7 (N.D.Ill. June 28, 1993) (Conlon, J.) (applying ICFA to "conduct committed in Illinois or directed at Illinois residents"), *aff'd*, 61 F.3d 1250 (7th Cir.1995); *Fry v. UAL Corp.*, 136 F.R.D. 626, 637 (N.D.Ill.1991) (Nordberg, J.) (rejecting argument that ICFA only applies to Illinois consumers)); *see also Hastings v. Fidelity Mortgage Decisions Corp.*, 984 F.Supp. 600, 615 (N.D.Ill.1997) (plaintiffs' claims could not satisfy most expansive reading of ICFA because conduct did not occur in Illinois) (Aspen, J.); *Nichols Motorcycle Supply Inc. v. Dunlop Tire Corp.*, 913 F.Supp. 1088, 1140 (N.D.Ill.1995) (Castillo, J.) (predicting that the Illinois Supreme Court would construe the ICFA liberally "to

include all consumers whose allegations of fraud directly or indirectly affect trade or commerce in Illinois."); *VPHI, Inc. v. Nat'l Educ. Training Group,* No. 94 C 5559, 1995 WL 51405 (N.D.Ill. Jan. 20, 1995) (Gettleman, J.) (conduct occurring wholly outside Illinois does not affect Illinois consumers).

The first line of cases is anchored in *Seaboard Seed Co. v. Bemis Co., Inc.,* 632 F.Supp. 1133 (N.D.Ill.1986) (Shadur, J.) and *Swartz.* In *Seaboard,* the plaintiff (Seaboard Corporation) sought to invoke the protections of the ICFA by arguing that the defendant (Bemis Company) operated a plant in Illinois. 632 F.Supp. at 1140. The court noted, however, that no conduct impacted consumers in Illinois and that all the allegedly deceptive conduct occurred outside the state. *See id.* Upon concluding that the ICFA protects against deceptive practices with an effect on "Illinois consumers," and that Seaboard could show no effect on any Illinois consumers, the court granted Bemis summary judgment. *See id.*

Subsequently, in *Swartz,* the court denied a Washington resident's attempt to invoke the ICFA. 818 F.Supp. 1214. Although the plaintiff purchased a vehicle from an Illinois business, *see Swartz v. Schaub,* No. 92 C 1623, 1992 WL 59112 (N.D.Ill. Mar.14 1992), the court maintained that the IFCA is "intended to deal only with the impact of statutorily prohibited practices on *Illinois* consumers." *Swartz,* 818 F.Supp. at 1214. The court reasoned that because the ICFA prohibits fraud in the conduct of any trade or commerce, and "commerce" is "specifically defined ... to include 'any trade or commerce directly or indirectly affecting the people *of this State,*'" the ICFA requires an effect on Illinois consumers. *See id.* (rejecting *Fry v. UAL Corp.,* 136 F.R.D. 626, 637 (N.D.Ill.1991) and adhering to *Seaboard Seed Co. v. Bemis Co.,* 632 F.Supp. 1133, 1140 (N.D.Ill.1986)).

This court respectfully finds that the court in *Seaboard* and *Swartz* interpreted the ICFA too narrowly to the extent that it refuses non-residents recovery under the ICFA when they are affected by conduct occurring in Illinois. As the court noted in *Fry,* 136 F.R.D. at 637, there is no specific

limitation in the statute. *See also Cirone–Shadow v. Union Nissan of Waukegan,* No. 94 C 6723, 1995 WL 238680 (N.D.Ill. Apr. 20, 1995) (Kocoras, J.) (following *Fry* ). Rather, the statute merely defines trade or commerce as including trade or commerce that "directly or indirectly affect[ ] the people of this State." 815 ILCS 505/1(f). To deny an out-of-state plaintiff standing to sue for a wrong in Illinois rejects the ICFA's liberal application directive, *see People ex rel. Daley v. Datacom Sys. Corp.,* 176 Ill.App.3d 697, 707, 126 Ill.Dec. 212, 531 N.E.2d 839, 845 (Ill.App.Ct.1988), *aff'd,* 146 Ill.2d 1, 165 Ill. Dec. 655, 585 N.E.2d 51 (1991); *Perrin v. Pioneer Nat'l Title Ins. Co.,* 83 Ill.App.3d 664, 672, 39 Ill.Dec. 124, 404 N.E.2d 508, 514 (Ill.App.Ct.1980), and results in an overtechnical construction of the statute. *See Dollieslager v. Hurst,* 295 Ill.App.3d 152, 156, 229 Ill.Dec. 458, 691 N.E.2d 1181, 1184 (Ill. App.Ct.1998) ("[A] statute's provisions should not be construed so technically so as to undermine its remedial purpose"). Moreover, the Illinois Supreme Court has certified classes including non-Illinois residents in ICFA actions. *See Martin v. Heinold Commodities, Inc.,* 117 Ill.2d 67, 109 Ill.Dec. 772, 510 N.E.2d 840 (1987); *Miner v. Gillette Co.,* 87 Ill.2d 7, 56 Ill.Dec. 886, 428 N.E.2d 478 (1981). Accordingly, the court directs that with respect to standing under the ICFA, any Illinois consumers, or any non-resident consumers, who purchased the allegedly misrepresented items in Illinois within the relevant time period have standing to sue and are members of the class.

 Gerber nevertheless maintains that the ICFA cannot constitutionally apply to claims of non-Illinois residents because there is an insufficient connection to the State of Illinois. The court disagrees. "For the application of a state's substantive law to be constitutionally permissible, sufficient contacts with that state must exist to ensure the choice of law is 'neither arbitrary nor fundamentally unfair.'" *Soo Line R.R. Co. v. Overton,* 992 F.2d 640, 644 (7th Cir.1993) (*quoting Allstate Ins. Co. v. Hague,* 449 U.S. 302, 313, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981)). In this case, the composition of the class is crafted to ensure sufficient contact

with the State of Illinois. In every case, the transactions giving rise to the action took place in Illinois. Applying the ICFA is neither arbitrary nor fundamentally unfair, as the State of Illinois has a significant interest in preventing fraudulent and deceptive business practices within its borders.

### 2. Form of Notice—When and How?

 What now remains is the form of notice to the still sizeable class. Rule 23 of the Federal Rules of Civil Procedure provides the court with wide discretion when managing a class. Once a court certifies a class and initiates notification procedures, it must work to

> direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion, and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel.

Fed.R.Civ.P. 23(c)(2). Because this action is not one in which members can be informed individually, the court must determine the "best notice practicable under the circumstances." At this point, Rule 23 "accords considerable discretion to a district court in fashioning notice...." *In re "Agent Orange" Product Liability Litigation,* 818 F.2d 145, 168 (2d Cir.1987). Ultimately, Rule 23 seeks "cooperative ingenuity on the part of counsel and the court in determining the most suitable notice in each case." *Berland v. Mack,* 48 F.R.D. 121, 129 (S.D.N.Y. 1969).

Unfortunately, Plaintiffs' proposed notice campaign is not realistic as it seeks to encompass most of the nation. Notification on such a broad scale would be substantially over inclusive and not necessarily fruitful. As the court has noted in the past, the proposed notice appears to be more of an attempt to "club Gerber into submission,"

rather than an attempt to reasonably notify class members of the pending litigation. Because this case is geographic in nature, *i.e.* arising from conduct in Illinois, the court believes that the notice should be largely limited to the geographical areas where class members are likely to be found. The most likely areas are the State of Illinois and the bordering states of Wisconsin, Iowa, Indiana, Kentucky, Tennessee and Missouri. It is from these states that daily commuters cross into Illinois for business and personal matters and are likely to purchase baby food on a regular basis.

Plaintiffs maintain that this is insufficient because "[n]ational publication is ... necessary to ensure that all Illinois purchasers, including those who have moved or who for some other reason may not now be present within the state, are informed about the pending action." (Pls.' Mem., at 6.) However, Plaintiffs submit no information regarding how many potential class members live outside of the state. Common sense dictates that there are a number of such class members, but Plaintiffs fail to show whether the number is so great as to require wide-ranged notification beyond the six states listed above. According to government data submitted by Gerber, a very minute percentage of possible class members likely moved during the relevant time period. (*See* Gerber Resp., Exs. C & D.) To require notice throughout the nation to corral these relatively few individuals, wherever they may be, could mislead millions of ineligible individuals, generate considerable confusion, and unreasonably harm Gerber.

In Gerber's alternative plan, it proposes notice by publication in 22 Illinois newspapers on two consecutive Sundays. According to Gerber, the notice would therefore reach 94% of Illinois households that subscribe to newspapers and more than 60% of the households in Illinois. The court finds that this plan is sufficient to adequately apprise class members within the state. However, as noted above, Plaintiffs shall also provide reasonable notification in Wisconsin, Iowa, Indiana, Kentucky, Tennessee and Missouri. The court also approves notification via newspa-

pers in those states, with the specific newspapers to be identified by the parties.

 Gerber also objects to Plaintiffs' use of the term "adulterated" in the notification, which Gerber claims is misleading because this case concerns advertising and not the introduction of injurious substances. While the court finds that the term "adulterated" may be technically proper when characterizing Plaintiffs' allegations, *see* Merriam Webster's Collegiate Dictionary, at 58 (10th ed.1984), the negative connotation creates the potential for unnecessary prejudice or confusion. Plaintiffs can avoid such prejudice or confusion by describing their claims pertaining to "false" or "deceptive" advertising as Gerber has done in its proposal. (*See* Gerber Resp. Ex. E.)

 With respect to the time of notification, Gerber seeks a delay in publishing the notice while Plaintiffs seek notification as soon as possible. Although Rule 23 does not specify any timetables, notice is generally issued promptly after certification. *See Harman v. Lyphomed, Inc.*, No. 88 C 0476, 1989 WL 6558, at *1 (N.D.Ill. Jan. 25, 1989); Manual for Complex Litigation, 3d § 30.211 (1995). In some cases, circumstances may require a special timetable because the court is forced to balance competing interests of notice and prejudice. Important considerations include whether one party may be harmed by the notice, and whether the class will be harmed by a delay. *See R & D Business Sys. v. Xerox Corp.*, 150 F.R.D. 87, 91 (E.D.Tex.1993) (*citing* 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure 2d, §§ 1786, 1788). However, in making the decision regarding the time for notification, it is essential that class members are given "an opportunity to present their objections" and "a reasonable time ... to make their appearance." *See id.* (*quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

In this case, the court need not weigh the respective interests of the parties. Although Gerber claims it will be prejudiced by early notice, and Plaintiffs claim the class will be prejudiced by later notice, the court is satisfied that the case is quickly approaching trial and that its deadlines will preclude any possible prejudice. Plaintiffs are instructed to provide a plan that conforms with this opinion within 30 days. The court expects the notification to be published by the end of the year, or soon thereafter, and then proceed to trial by May 18, 1999, at 10:00 a.m. Adequate notification can accordingly be published approximately 120 days before trial with no resulting prejudice to either side.

### IV. Conclusion

For the foregoing reasons, Plaintiffs' motion is denied and Plaintiffs are instructed to produce a new plan that conforms with the requirements discussed in this opinion within 30 days.

IT IS SO ORDERED.