MAN ROLAND INC., Plaintiff,

v.

QUANTUM COLOR CORP., Defendant.

No. 98 C 7753.

United States District Court,
N.D. Illinois,
Eastern Division.

June 18, 1999.

David G. Lynch, Norman Mitchell Leon, Kim Matsunaga, Rudnick & Wolfe, Chicago, IL, for plaintiff.

David S. Ruskin, James A. Marino, Law Offices of David S. Ruskin, Chicago, IL, for defendant.

## *MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

Before the court is plaintiff MAN Roland Incorporated's motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant Quantum Color Corporation's amended counterclaims. For the following reasons, the court grants in part and denies in part plaintiff MAN Roland Incorporated's motion to dismiss Quantum Color Corporation's amended counterclaims.

## I. *BACKGROUND*

Plaintiff MAN Roland Incorporated ("MAN Roland") brings this diversity action against the defendant Quantum Color Corporation ("Quantum"). MAN Roland is a business incorporated under the laws of Delaware with its principal place of business in Illinois. Quantum is a business incorporated under the laws of New York with its principal place of business in New York. The amount in controversy exceeds $75,000. Thus, this court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

This action allegedly arises out of a June 27, 1997 used machinery contract between

the two parties.[1] In this contract, MAN Roland agreed to sell a 1987 used press to Quantum for $405,000. According to MAN Roland, Quantum agreed to pay $5,000 upon execution of the contract, $265,000 upon delivery of the press, and the balance of $135,000 upon commercial operation of the press. MAN Roland alleges that it never received the balance even though Quantum allegedly put the press into operation long ago. Any additional facts, the court will discuss in further detail under the relevant counterclaim.

## II. *DISCUSSION*

### A. *Standard for deciding a Rule 12(b)(6) motion to dismiss*

In addressing MAN Roland's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court assumes that the well-pleaded allegations of Quantum's amended counterclaims are true and considers them in the light most favorable to Quantum. *See Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir. 1987). If, when viewed in the light most favorable to Quantum, the counterclaim fails to state a claim upon which relief can be granted, the court must dismiss it. *See* FED.R.CIV.P. 12(b)(6); *Gomez,* 811 F.2d at 1039. However, the court may dismiss the counterclaim only if it appears beyond a doubt that Quantum can prove no set of facts in support of its claim that would entitle it to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Even under the liberal notice pleading standard of the Federal Rules of Civil Procedure, however, the counterclaim must include either direct or inferential allegations respecting all material elements of the claim asserted. *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir. 1991). Bare legal conclusions attached to narrated facts will not suffice. *Strauss v.*

*City of Chicago,* 760 F.2d 765, 768 (7th Cir.1985).

### B. *First and second amended counterclaims—Breach of contract*

Quantum styles both its first and second amended counterclaims as allegations of a breach of contract. Although, in reality, Quantum is asking this court to rescind the contract because MAN Roland failed to deliver the "standard equipment" and failed to install the equipment. Thus, the court will treat the first and second amended counterclaims as allegations to state a claim for recission of the contract.

■ Quantum has the right to rescind a contract of sale, if it offered to return the article. *See American Sanitary Rag Co. v. United States Hoffman Machinery Corp.,* 320 Ill.App. 556, 51 N.E.2d 809, 811 (1943). Quantum did offer to return the press to MAN Roland, (D.Countercl.¶ 162), but MAN Roland would not accept the return. (D.Countercl.¶ 162). Thus, Quantum has fulfilled one of the requirements for a claim of recission.

■ Furthermore, a party may seek recission of a contract only when there has been a material breach by another party. *See Arrow Master, Inc. v. Unique Forming Ltd.,* 12 F.3d 709, 714 (7th Cir.1993); *Unique Watch Crystal Co. v. Kotler,* 344 Ill.App. 54, 99 N.E.2d 728, 733 (1951). A material breach occurs when a party to the contract "fails to perform an element of the agreement without which the contract would not have been made." *Stowe v. Balsier,* No. 88 C 4929, 1989 WL 32932, at *3 (N.D.Ill. Apr.4, 1989) (citing *Trapkus v. Edstrom's,* 140 Ill.App.3d 720, 95 Ill.Dec. 119, 489 N.E.2d 340, 344–45 (1986)).

■ Quantum's first and second amended counterclaims allege facts sufficient to establish that MAN Roland materially breached the contract because Quantum alleges, that without the standard equip-

---

**1.** The contract states that the parties entered into this contract in Illinois and that Illinois law shall govern the contract. (Pl. Compl.Ex.1). Thus, the court will apply Illinois law to all of the parties' allegations.

ment provision and the installment provision, it would not have agreed to the contract. More specifically, the counterclaims state that because MAN Roland (1) failed to "deliver goods of the kind, quality and quantity required" by the contract, (D.Countercl.¶ 125–26), and (2) failed to install the press "so that it would operate in accordance with its design specification . . . and accepted mean time between service call[s]," (D.Countercl.¶¶ 131, 134), that MAN Roland breached material terms of the contract. Thus, Quantum has sufficiently alleged "a material breach," the second requirement, for a claim of recission.

MAN Roland also alleges that Quantum's second amended counterclaim fails to state a claim because the term "install" does not require MAN Roland to install the press so that it would (1) "produce commercially acceptable two color process work in a commercially acceptable manner," (D.Countercl.¶ 129), and (2) "operate in accordance with its design specifications . . . and accepted mean time between service call specifications" (D.Countercl.¶¶ 131, 132). Thus, MAN Roland alleges it did not breach the contract.

Despite that the contract does not specifically state that MAN Roland had any obligation to install the press so that it would function as Quantum claims,[2] both parties interpretation of the term "install" is reasonable. Thus, the court finds this term, "install," to be ambiguous, see ECHO, Inc. v. Whitson Co., 52 F.3d 702, 705 (7th Cir.1995) (quoting Metalex Corp. v. Uniden Corp. of Am., 863 F.2d 1331, 1333 (7th Cir.1988) (stating that ambiguity exists if the language of the contract is " 'reasonably and fairly susceptible to more than one meaning.' ")); and therefore, at this stage of the litigation, the court can not rule as a matter of law that the term "install" does not include what Quantum alleges. Accordingly, MAN Ro-

land's motion to dismiss Quantum's first and second amended counterclaims is denied.

## C. *Third amended counterclaim—Breach of express warranty*

In its third amended counterclaim, Quantum alleges that MAN Roland breached several express warranties which MAN Roland made during the negotiations, at the time of sale and on the face of the contract. However, MAN Roland argues that this counterclaim fails to state a claim because the contract is the final expression of the parties agreement and the contract disclaims any express warranties. In effect, both parties are asking this court to interpret the contract. Thus, the court must determine (1) whether the contract is ambiguous; (2) whether the contract is the final expression of the parties; and (3) whether MAN Roland breached any express warranties.

In Illinois, the court is to interpret the contract as a whole and "in a way that gives effect to all terms, in the light of their ordinary meaning." *LaSalle Nat'l Trust, N.A. v. ECM Motor Co.,* 76 F.3d 140, 144 (7th Cir.1996) (citing *In re Halas,* 104 Ill.2d 83, 83 Ill.Dec. 540, 470 N.E.2d 960, 965 (1984)). When the terms of the contract are clear, the court must interpret the terms in their ordinary meaning. *Id.* at 144–45. However, if the contract is ambiguous, "the contract's meaning is a question for the trier of fact." *ECHO, Inc.,* 52 F.3d at 705; see *LaSalle,* 76 F.3d at 145. Ambiguity exists if the language of the contract is " 'reasonably and fairly susceptible to more than one meaning.' " *ECHO,* 52 F.3d at 705 (citing *Metalex Corp.,* 863 F.2d at 1333).

Applying these principles to this case, the court finds that the terms relating to the express warranties are unambiguous. Furthermore, neither party alleges any

**2.** Relevant to this claim, the contract states: "The price includes delivery and installation and print-to-match test. Rollers to be recov-

ered and installed on both units." (Pl. Compl.Ex.1).

ambiguity in these terms. Accordingly, this court will give these contract terms their ordinary meaning.

■ The court must next determine whether the contract is the final expression of the parties. Under Illinois law:

> Terms with respect to which the confirmatory memoranda of the parties or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of their agreement or of a contemporaneous oral agreement.

810 ILL.COMP.STAT. 5/2-202. A writing is presumed to be the final expression of the parties agreement, " 'if the contract imports on its face to be a complete expression of the whole agreement.' " *Baxter Healthcare Corp. v. O.R. Concepts, Inc.,* 69 F.3d 785, 790 (7th Cir.1995) (quoting *Sunstream Jet Express, Inc. v. Int'l Air Serv. Co.,* 734 F.2d 1258, 1265 (7th Cir.1984)); *see also Continental Mobile Tel. Co. v. Chicago SMSA Ltd.,* 225 Ill.App.3d 317, 167 Ill.Dec. 554, 587 N.E.2d 1169, 1173 (1992) ("[T]he integration provision contained in the contract indicates that the parties intended this agreement to be their final expression, and superseded all prior discussions and agreements between the parties.").

■ In this case, the contract does contain an explicit integration clause which states:

> This agreement *constitutes and contains the entire agreement* between the parties. All prior or contemporaneous understandings or agreements between the parties, if any, whether written or oral or express or implied, are merged into and with this Agreement, which fully and conspicuously states and expresses the parties' understanding and agreement.

(Pl.Compl.Ex. 1 ¶ 18) (emphasis added). Thus, since the contract indicates that the parties intended this contract to be a complete expression of their entire agreement, this contract is the final expression between the parties. Accordingly, Quantum cannot rely upon any prior or contemporaneous oral agreements that may have occurred between the parties.

Having determined that the contract is the final expression of the parties, the court will now examine the contract to determine if it contains any express warranties which MAN Roland breached. Quantum alleges that the contract expressly warrants that the press (1) "would be fit for its ordinary purposes," (2) "would produce commercially acceptable two color process work in a commercially acceptable manner," (3) "would operate in accordance with its design specifications ... and accepted mean time between service calls," (4) "would be fit for defendant's purposes," and (5) "would operate in reasonable accordance with defendant's subjective operation, reliability and quality requirements for the purchase of printing presses, printing equipment, service and supplies of various kinds by defendant." (D.Countercl.¶ 150–54). MAN Roland, on the other hand, claims that the contract disclaims all express warranties and thus, that Quantum has failed to state a claim.

■ "An express warranty is a 'creature of contract' that 'arises only because the warrantor has willed it into being by making the requisite affirmation.' " *Miller v. Showcase Homes, Inc.,* No. 98 C 2009, 1999 WL 199605, at *7 (N.D.Ill. Mar.31, 1999) (quoting *Collins Co. v. Carboline Co.,* 125 Ill.2d 498, 127 Ill.Dec. 5, 532 N.E.2d 834, 838 (1988)). A party to the contract, however, may limit or exclude any express warranties so long as the "words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other." 810 ILL.COMP.STAT. 5/2–316.

■ Despite Quantum's assertions, the contract does not contain any of the five

alleged express warranties.[3] The contract, however, does contain a provision which disclaims any warranties. The contract states in large, bold typeset: "ALL WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS, IMPLIED AND STATUTORY, ARE HEREBY DISCLAIMED." (Pl.Compl.Ex. 1 ¶ 11). Because the language of this disclaimer is consistent with the terms of the contract, this court must give effect to the disclaimer.

Thus, Quantum has failed to state a claim for breach of express warranty because the contract does not contain the express warranties which Quantum alleges, and furthermore, the contract disclaims all express warranties. Accordingly, the court grants MAN Roland's motion to dismiss Quantum's third amended counterclaim.

### D. *Fourth and fifth amended counterclaims—Breach of implied warranties*

In its fourth and fifth amended counterclaims, Quantum, respectively, alleges that MAN Roland breached an implied warranty of merchantability and breached an implied warranty of fitness. MAN Roland argues that both of these counterclaims fail to state a claim because the Uniform Commercial Code ("UCC"), which Illinois has adopted, expressly permits parties to a commercial transaction to contract to disclaim all implied warranties.

Section 2–316(3)(a) of the UCC provides:

> [U]nless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty.

810 ILL.COMP.STAT. 5/2–316(3)(a). However, to specifically disclaim the implied war-

ranty of merchantability, the language must conspicuously mention merchantability. *Id.* 5/2–316(2). "Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color." *Id.* 5/1–201(10).

■ In their contract, Quantum and MAN Roland agree that all express, implied and statutory warranties are disclaimed. (Pl.Compl.Ex. 1 ¶ 11). This disclaimer specifically states: "ALL WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS, IMPLIED AND STATUTORY, ARE HEREBY DISCLAIMED. ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE HEREBY DISCLAIMED. THE MACHINERY (INCLUDING ANY ACCESSORIES AND COMPONENTS) IS SOLD 'AS IS.'" (Pl.Compl.Ex. 1 ¶ 11). This language clearly communicates that all warranties are excluded. Furthermore, the language specifically mentions merchantability and is written in a contrasting type set (large, bold letters). Thus, MAN Roland has sufficiently called Quantum's attention to the exclusion of warranties, including the implied warranty of merchantability.

Because the disclaimer provision in the contract between MAN Roland and Quantum is conspicuous and excludes all warranties, the court finds that Quantum has not stated a claim for breach of the implied warranty of merchantability or for breach of the implied warranty of fitness. Accordingly, the court grants MAN Roland's motion to dismiss Quantum's fourth and fifth amended counterclaims.

### E. *Sixth and seventh amended counterclaims—Illinois consumer fraud and deceptive business practices act*

In its sixth and seventh amended counterclaims, Quantum, respectively, alleges

---

**3.** The court will not address Quantum's allegations that MAN Roland provided it with various oral express warranties both prior to and contemporaneous with the contract be-

cause, as explained above, the contract is the final and complete expression of the parties' agreement.

that MAN Roland violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL.COMP.STAT. 505/1 *et seq.*, by making fraudulent representations and by omitting material facts. MAN Roland contends that the court should dismiss both of these counterclaims for failure to state a claim because the alleged misrepresentations and omissions did not have, or could not have had, any effect on Illinois consumers.

The Illinois Consumer Fraud Act ("ICFA") provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact ... are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

*Id.* 505/2. To state a claim under the ICFA, Quantum must allege that: (1) MAN Roland engaged in a deceptive act or practice; (2) MAN Roland intended that Quantum rely on the deception; and (3) "the deception occurred in the course of conduct involving trade or commerce." *Adler v. William Blair & Co.*, 271 Ill. App.3d 117, 207 Ill.Dec. 770, 648 N.E.2d 226, 233 (1995). The ICFA defines "trade" and "commerce" as "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 ILL.COMP.STAT. 505/1(f).

MAN Roland does not assert that Quantum has failed to properly allege either of the first two elements for a claim under the ICFA. MAN Roland only contends that Quantum has failed to assert that the alleged deception occurred in the course of conduct involving trade or commerce because the alleged misrepresentation or omission did not affect the people of Illinois. In making this argument, MAN Roland relies on a line of cases from the District Court for the Northern District of Illinois which hold that only Illinois consumers have standing to sue under the ICFA. *See Endo v. Albertine,* No. 88 C 1815, 1995 WL 170030, at *6 (N.D.Ill. Apr.7, 1995) (Holderman, J.); *Swartz v. Schaub*, 818 F.Supp. 1214, 1214 (N.D.Ill. 1993) (Shadur, J.); *Lincoln Nat'l Life Ins. Co. v. Silver*, 1991 U.S.Dist. LEXIS 13857, at *34–35 (N.D.Ill. Oct. 1, 1991) (Weisberg, J.); *Seaboard Seed Co. v. Bemis Co.*, 632 F.Supp. 1133, 1140 (N.D.Ill.1986) (Shadur, J.). Following the line of reasoning in these cases, MAN Roland contends that because Quantum's business and the press are located in New York, that Quantum is not an Illinois consumer, and thus, does not have standing to sue.

Interestingly, MAN Roland fails to address the fact that there is a split within this district as to whether only Illinois consumers have standing to sue or whether non-resident consumers also have standing. In the cases which have found that non-resident consumers also have standing to sue, the judges have based their decisions upon a more liberal construction of the ICFA. *Tylka v. Gerber Prods. Co.*, 182 F.R.D. 573, 577–78 (N.D.Ill.1998) (Norgle, J.); *Nichols Motorcycle Supply Inc. v. Dunlop Tire Corp.*, 913 F.Supp. 1088, 1139–40 (N.D.Ill.1995) (Castillo, J.) (vacated in part pursuant to settlement); *Cirone–Shadow v. Union Nissan of Waukegan*, No. 94 C 6723, 1995 WL 238680, at *4–5 (N.D.Ill. Apr.20, 1995) (Kocoras, J.); *Fry v. UAL Corp.*, 136 F.R.D. 626, 637 (N.D.Ill.1991) (Nordberg, J.); *see also Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 749 F.Supp. 869, 878 (N.D.Ill.1990) (Aspen, J.) ("Defendants have failed to demonstrate just exactly how, given the Act's broad definitional sweep and explicit mandate of liberal con-

struction, Uniroyal Goodrich's allegations do not satisfy the 'Illinois contact' requirements of the Act."); *Hartmann Co. v. Capital Bank & Trust Co.*, 296 Ill.App.3d 593, 230 Ill.Dec. 830, 694 N.E.2d 1108, 1116 (1998) (quoting *Duhl v. Nash Realty, Inc.*, 102 Ill.App.3d 483, 57 Ill.Dec. 904, 429 N.E.2d 1267, 1277 (1981)) ("Our legislature enacted this statute to create 'broad protective coverage of consumers from the many types of deceptive or unfair selling and advertising techniques used by businesses.' ").

■ This court respectfully finds that the courts which interpreted the ICFA to extend standing only to consumers who are Illinois residents construed the ICFA too narrowly given the Illinois legislature's statement that the ICFA "shall be liberally construed to effect the purposes thereof." 815 ILL.COMP.STAT. 505/11a. "To deny an out-of-state plaintiff standing to sue for a wrong in Illinois rejects the ICFA's liberal application directive … and results in an overtechnical construction of the statute." *Tylka*, 182 F.R.D. at 577 (citations omitted). Thus, this court finds that Quantum, as a non-resident consumer, who purchased the press in Illinois from an Illinois corporation has standing to sue under the ICFA. Accordingly, the court denies MAN Roland's motion to dismiss Quantum's sixth and seventh amended counterclaims.

### F. *Claim for consequential damages*

In MAN Roland's motion to dismiss Quantum's claims for consequential damages, MAN Roland contends that the contract contains a valid disclaimer of such damages under the UCC. However, Quantum counters that the waiver is unconscionable, and thus, should not be enforced.

The UCC allows contracting parties to limit their contractual remedies. Section 2–719 provides:

Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

810 ILL.COMP.STAT. 5/2–719(3).

■ In the present case, the contract between MAN Roland and Quantum disclaims consequential damages. Paragraph twelve of the contract provides:

In no event shall Seller or the manufacturer of the Machinery and Accessories (including its officers, agents, employees, representatives, attorneys and parent, subsidiary and affiliated companies) be liable for damages of any nature, including without limitation, special, direct, indirect, incidental or *consequential* damages, whether or not relating to or in any manner resulting from or arising out of any nonconformity of the Machinery and Accessories to the warranty herein, any defect in material and workmanship, any performance or nonperformance by Seller of any of the obligations or delay of delivery or failure to deliver for whatever cause, other than damages expressly provided for above.

(Pl.Compl.Ex. A ¶ 12) (emphasis added). Thus, based on the UCC's acceptance of contractual waivers of consequential damages and this express provision in the contract, the court finds that Quantum waived its right to consequential damages when it signed the contract.

■ As for Quantum's argument that this provision of the contract is unconscionable, the court is unable to assess this argument. "In assessing whether a contractual provision should be disregarded as unconscionable, Illinois courts look to the circumstances existing at the time of the contract's formation, including the relative bargaining positions of the parties and whether the provision's operation would result in unfair surprise." *Cognitest Corp. v. Riverside Publ'g Co.*, 107 F.3d 493, 499 (7th Cir.1997). Quantum has not plead in any of its counterclaims that this provision or any other provision of the

contract, for that matter, is unconscionable nor has it plead any facts relating to this alleged unconscionability. Quantum only alleges unconscionability in its response to MAN Roland's motion to dismiss. Thus, the court will not and cannot assess whether this provision is unconscionable. *See Cognitest Corp.*, 107 F.3d at 496 ("The complaint before us does not include an allegation of unconscionability ... and the district court was therefore entitled to rely upon the limitation provision in concluding that the contract precludes recovery."); *see also Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 339 (7th Cir.1984) ("However, without any indication in the record that the [plaintiff] ... even alleged, much less proved, that they were forced to unknowingly forfeit their rights in an unfair manner, we cannot uphold the district court's finding that the arbitration clause is unconscionable."). Accordingly, MAN Roland's motion to dismiss Quantum's claims for consequential damages is granted.

### CONCLUSION

For the reasons set forth in this opinion, the court denies in part and grants in part plaintiff MAN Roland's motion to dismiss this case for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Accordingly, the court enters the following orders:

1. The court denies MAN Roland's Rule 12(b)(6) motion to dismiss Quantum's first, second, sixth, and seventh amended counterclaims.

2. The court grants MAN Roland's Rule 12(b)(6) motion to dismiss Quantum's third, fourth and fifth amended counterclaims and claim for consequential damages.