In re BOARDWALK MARKETPLACE
SECURITIES LITIGATION.

No. MDL No. 712 (WWE).

United States District Court,
D. Connecticut.

Sept. 12, 1988.

RULING ON MOTION FOR CLASS
CERTIFICATION

EGINTON, District Judge.

The plaintiffs are investors who purchased partnership interests in nine related

limited partnerships ostensibly organized to redevelop property in Atlantic City, New Jersey. To finance their purchases, many investors executed promissory notes payable to American Funding Limited. The redevelopment scheme collapsed, and many investors ceased making payments on their notes. The defendants include promoters, financial advisors, and banking institutions alleged to be involved in the fraudulent scheme. The investors claim, *inter alia,* that the defendant banks are not holders in due course because, at the time they acquired the notes, they should have been aware of investor defenses against enforcement of the notes. *See In re Boardwalk Marketplace Securities Litigation,* 668 F.Supp. 115 (D.Conn.1987). They further claim that the defendants have engaged in fraudulent conduct in violation of the Racketeer Influenced and Corrupt Organizations Act and the Securities Exchange Act of 1934. Pending is the investors' motion for class certification. For the reasons set forth below, the motion for class certification is GRANTED.

## I. Background

■ The Supreme Court has cautioned lower courts to avoid a preliminary inquiry into the merits of a suit to determine whether it may be conducted as a class action. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). Accordingly, when deciding a motion for class certification, a court may accept the allegations in the complaint as true. *See, e.g., Shelter Realty Corp. v. Allied Maintenance Corp.,* 574 F.2d 656, 661 n. 15 (2d Cir.1978). The Court finds the following facts solely for the purpose of ruling on the motion for class certification.

In 1985, Nashua Trust Company ("Natco"), a newly-formed, Texas-chartered trust company, initiated what has become known as the "Boardwalk Marketplace" project. Natco's undisclosed principal was convicted swindler John Peter Galanis. The plaintiffs contend that 1200 investors were defrauded into investing approximately $82 million as a result of the actions of defendant Galanis and his associates.

The Boardwalk Marketplace project entailed the formation of nine Connecticut limited partnerships for the purpose of funding the proposed rehabilitation of a number of dilapidated properties located near the boardwalk in Atlantic City. Investors for all nine limited partnerships were solicited through the use of similar private offering memoranda. The offering materials set forth facts such as the characteristics of buildings to be refurbished and financial projections. Investors were told that they could expect tax benefits as the project neared completion.

The offering materials further indicated that investors could finance their purchases of partnership interests through a purportedly independent New Jersey lending institution named American Funding Limited. However, the offering materials did not disclose that American Funding was not a truly independent entity because it was run by defendant Jay Botchman. Botchman allegedly was paid $12,000 a month to find sources of funds for Natco. In addition, he had been named as a co-defendant with Galanis in a Texas civil suit involving a claim of fraud in the sale of limited partnership interests.

Unaware that Galanis and Botchman were involved in the scheme, the majority of investors borrowed money from American Funding. Investors financing their purchases through American Funding executed promissory notes which called for installment payments to be made over a series of years. In turn, American Funding sold the notes to other banks which also are named as defendants in this litigation. Most investors purchased an interest in only one of the nine limited partnerships. Most partnership interests were sold in units of $50,000 or $100,000.

Without warning, Natco filed for bankruptcy under Chapter 11 on June 5, 1986. Ten days later, a newspaper article revealed that one of the true promoters of the Boardwalk Marketplace project was Galanis.

The plaintiffs have charged over forty defendants with varying acts of misconduct in connection with this complicated scheme.

The defendants not only include Galanis and Botchman, but also the entities which worked on financial projections for some of the partnerships, prepared portions of the offering materials, and financed the purchases of the partnership interests.

## II. Discussion

Approximately 45 investors seek to act as class representatives. Before a suit may be certified as a class action, it must meet all the requirements in Fed.R.Civ.P. 23(a) and also fall within one of the subsections of Rule 23(b). The plaintiffs seek class certification under Rule 23(b)(3). The defendants primarily argue that individual issues predominate in this suit, thus precluding class certification.

### A. Numerosity

■ The plaintiffs must show that "the class is so numerous that joinder of all members is impracticable...." Fed.R.Civ. P. 23(a)(1). The parties apparently agree that approximately 1200 individuals invested in at least one of the nine limited partnerships which made up the Boardwalk Marketplace project. The plaintiffs have satisfied the numerosity requirement. *See Michaels v. Ambassador Group, Inc.*, 110 F.R.D. 84, 88 (E.D.N.Y.1986) (1000 class members satisfies requirement.)

### B. *Common Questions of Law or Fact*

■ The Court may certify this suit as a class action if "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Likewise, under Fed.R.Civ.P. 23(b)(3), the Court may allow a plaintiff to maintain a suit as a class action if "the questions of law or fact common to the members of the class predominate over any question affecting only individual members...."

The plaintiffs have alleged a course of conduct which satisfies the "common questions" requirement of Rule 23. Proposed class members allege that they have sustained monetary damages as a result of the defendants' fraudulent concealment of the participation of Galanis and Botchman in the Boardwalk Marketplace project, as well as the bogus nature of the project itself. For the most part, the same legal standard must be applied to determine whether any particular defendant's role in the scheme was unlawful. The similarity of questions of fact and law raised in the complaint suggests that certification is appropriate. *See Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

■ The defendants argue that individual issues of reliance predominate in this litigation and thus preclude class certification. In suits which primarily involve a failure to disclose information, reliance is presumed so long as "the facts withheld [were] material in the sense that a reasonable investor might have considered them important in the making of [the investment] decision." *Affiliated Ute Citizen of Utah v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). Here, investors received prospectuses which allegedly failed to disclose important financial data and information regarding the project's actual promoters. The fact that each limited partnership issued a slightly different prospectus is of no import because "they allegedly were uniformly misleading." *Bresson v. Thomson McKinnon Securities Inc.*, 118 F.R.D. 339, 343 (S.D.N.Y.1988). In cases such as this, "[w]here the alleged misrepresentations are contained in written documents addressed to the class as a whole rather than an individualized sales pitch, common issues are more likely to predominate over individual issues." *In re Lilco Securities Litigation*, 111 F.R.D. 663, 669 (E.D.N.Y. 1986); *cf. Soper v. Valone*, 110 F.R.D. 8, 9–10 (W.D.N.Y.1985) (Class treatment may be inexpedient where misrepresentations and omissions arise primarily from oral communications.)

The defendants also argue that they may show that some of the investors relied upon third parties, such as investment counselors, thus rendering class treatment inappropriate. The fact that some plaintiffs sought advice before investing does not, in and of itself, suggest that those plaintiffs were not harmed by the defendants' alleged misconduct. Even if some investors relied, in part, upon the advice of a consul-

tant, it is reasonable to assume that both were deceived by the prospectuses. Moreover, the defendants .cannot defeat class certification efforts by asserting an intention to rebut the presumption that the investors were deceived by misstatements and omissions in the offering materials. *See Fisher v. Pleassey Co. Ltd.*, 103 F.R.D. 150, 156 (S.D.N.Y.1984).

The defendants have devoted a substantial portion of their argument to addressing the applicability of the "fraud on the market" theory to the instant action. As with the presumption of reliance set forth in *Affiliated Ute*, the fraud on the market theory provides an alternative to the traditional means of addressing the issue of causation. *See, e.g., Nelsen v. Craig–Hallum Inc.*, 659 F.Supp. 480, 484 n. 3 (D.Minn.1987). It is true that, in contrast to most cases which have applied fraud on the market, this action does not involve securities traded on the open market. *See, e.g., Basic Inc. v. Levinson*, — U.S. —, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). However, one court has suggested that the theory may be applicable to some cases involving "undeveloped" markets. *See Shores v. Sklar*, 844 F.2d 1485, 1493 (11th Cir.1988) (suggesting that fraud on the undeveloped market arises from the common sense notion that purchasers of newly-marketed securities "do not ordinarily seek to purchase a loss in the form of a fraudently marketed bond"). That consideration aside, the defendants' objection to the fraud on the market theory is largely moot because, according to the allegations in the complaint, this action primarily involves defendants' failure to disclose material information, and thus falls within the presumed reliance discussed in *Affiliated Ute*. *See In re McDonnell Douglas Corp. Securities Litigation*, 587 F.Supp. 625, 627–28 (E.D.Mo. 1983).

### C. Typicality

■ Rule 23(a)(3) provides that "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." The defendants argue that they may rebut whether individual class members actually relied on the offering materials. They also claim that proposed class representatives have suffered different losses as a result of the scam. These asserted differences do not render the claims of the proposed class representatives atypical.

"The general rule in the Second Circuit is that individual questions of reliance are not appropriate in determining whether class action status is proper, and thus are not sufficient to defeat class certification." *Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 198 (S.D.N.Y.1986). "[A]ctions for securities fraud which customarily allege a conspiracy or common course of conduct intended to defraud a group of investors have been frequently certified as class actions notwithstanding the existence of the individual issues of misrepresentation and reliance." *Abramovitz v. Ahern*, 96 F.R.D. 208, 216 (D.Conn.1982). The record suggests that proposed class representatives were all misled by similar written materials. At this point, it does not appear that any unique defenses would divert attention from the basic claims set forth in the complaint. *See Kline v. Wolf*, 88 F.R. D. 696, 700 (S.D.N.Y.1981). If the defendants successfully raise defenses applicable to less than all class members, separate hearings can be conducted on those issues. *See Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168, 173 (E.D.Pa.1979). Thus, the claims of the proposed representatives can be considered to be typical of the claims of others in the proposed class. *See Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y.1981).

### D. Protection of Interests of Class Members

■ To certify a suit as a class action, the Court must be satisfied that "the representative parties will fairly and adequately protect the interests of the class." Fed.R. Civ.P. 23(a)(4). The Court must scrutinize the adequacy of representation so that it can "eliminate so far as possible the likelihood ... that the plaintiff has interests antagonistic to those of the remainder of the class." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir.1968). "The interests of the class representatives should co-

incide with those of the class members they seek to represent, and the class representatives and their attorneys must vigorously and competently prosecute the action." *In re Gulf Oil/Cities Service Tender Offer Litigation*, 112 F.R.D. 383, 387 (S.D.N.Y. 1986).

The defendants do not claim that the plaintiffs' attorneys are unqualified, inexperienced, or otherwise unable to conduct this suit. Rather, they argue that the proposed class representatives are either insufficiently knowledgeable of the nature of the claims or have interests antagonistic to other class members. "The class representative need not be the best of all representatives, but one who will pursue a resolution of the controversy in the interests of the class." *Dura–Bilt Corp.*, 89 F.R.D. at 101. Here, the record demonstrates that the twelve individuals whose depositions were taken are sufficiently familiar with the issues in this suit. Given the fact that all plaintiffs invested at least $50,000, each proposed representative would seem to have a substantial interest in pursuing this action toward a favorable resolution. Finally, the defendants have failed to demonstrate any substantial conflicts between those who complied with class discovery and other potential class members.

### E. Superiority of Class Action

■ Finally, a court may allow a suit to proceed as a class action if it finds "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Given the substantial identity of the major issues in the actions filed thus far, the Court finds that certifying this action as a class suit is superior to other procedural devices such as joinder. To some extent, the Judicial Panel on Multidistrict Litigation, in deciding to transfer the already pending individual actions to this district, has determined that it is desireable to concentrate the litigation of all relevant claims into one proceeding. *See In Re Energy Systems Equipment Leasing Securities Litigation*, 642 F.Supp. 718, 752 (E.D.N.Y.1986). Allowing this suit to proceed as a class action will eliminate the risk of inconsistent adjudications. In addition, both the number and geographic diversity of potential parties to this complicated action suggest that class certification is the most efficient way to proceed.

### F. Pendent State Claims

■ The plaintiffs also allege common law negligence, fraud, and misrepresentation claims which the defendants argue should not be included in any proposed class certification order. Although there seems to be a split of authority, the better approach seems to be that where, as here, the plaintiffs common law claims arise out of the same allegedly fraudulent scheme and involve the same misrepresentations and omissions as the federal causes of action, they should be certified as well. *See, e.g., In re Energy Systems Equipment Leasing Securities Litigation*, 642 F.Supp. at 753.

The defendants suggest that the district court would be required to apply different liability standards depending upon where a particular plaintiff lives or where he purchased his partnership interest. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 and n. 6 (11th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988). Without deciding which law ultimately applies to the pendent state claims, the Court notes that all nine limited partnerships were formed under Connecticut law; therefore, it seems that Connecticut law rationally could be applied to many claims. *See O'Connor v. O'Connor*, 201 Conn. 632, 650, 519 A.2d 13 (1986) (applying Restatement most significant relationship test). Likewise, issues involving the bank notes are governed by Connecticut Law. *See In re Boardwalk Marketplace Securities Litigation*, 668 F.Supp. at 116. Thus, it presently appears that the defendants have exaggerated the possibility that this Court will have to apply the law of fifty jurisdictions to the pendent state claims in this suit. Nevertheless, the Court notes that pendent claims either can be decertified or dismissed if they become unmanageable. *See In re Lilco Securities Litigation*, 111 F.R.D. at 670.

## Conclusion

The Court finds that this suit is maintainable as a class action by plaintiffs against all defendants on behalf of the following class:

> All purchasers of limited partnership interests in one or more of the Boardwalk Marketplace limited partnership offerings in or about 1985.

Rule 23(c)(4)(B) authorizes the Court to divide any class into subclasses when appropriate. Various class members have distinct claims against one or more of the bank defendants. Accordingly, the Court also certifies the following subclasses:

> 1. (a) All persons who purchased limited partnership interests in one or more of the Boardwalk Marketplace limited partnerships and whose promissory notes evidencing personal loans for that purpose are now claimed to be held by Binghamton Savings Bank.
>
> (b) All persons who purchased limited partnership interests in one or more of the Boardwalk Marketplace limited partnerships and whose promissory notes evidencing personal loans for that purpose are now claimed to be held by Home Bank and Trust Co. (currently known as Shawmut Home Bank).
>
> (c) All persons who purchased limited partnership interests in one or more of the Boardwalk Marketplace limited partnerships and whose promissory notes evidencing personal loans for that purpose are now claimed to be held by Public Loan Company, Inc.
>
> (d) All persons who purchased limited partnership interests in one or more of the Boardwalk Marketplace limited partnerships and whose promissory notes evidencing personal loans for that purpose are now claimed to be held by Syracuse Savings Bank (currently known as Norstar Bank of Central New York).
>
> (e) All persons who purchased limited partnership interests in one or more of the Boardwalk Marketplace limited partnerships and whose promissory notes evidencing personal loans for that purpose are now claimed to be held by Empire of America Federal Savings Bank.

In addition, the Court certifies the following subclass against American Funding and its controlling members, defendants Botchman, Dacey, Genstar Mortgage, and Westmore Financial:

> 2. All persons who signed promissory notes originating with American Funding, Ltd.

Finally, the plaintiffs shall submit a proposed Order of Notice to Class Members on or before October 14, 1988.

SO ORDERED.