John A. GARNER, et al., Plaintiff,

v.

Denis J. HEALY, et al., Defendant.

No. 97 C 3561.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 5, 1999.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Anne Michell Burton, Edelman & Combs, Adam Goodman, Peterson & Ross, Chicago, IL, for John A. Garner and Steven G. Grant.

J. Patrick Herald, John Christopher Filosa, David Jonathan Davis, Patricia O'Brian, Sanjiv D. Sarwate, Baker & McKenzie, Chicago, IL, for Denis J. Healy, Sondra Hirsch Healy, Mattherw Broderick and Turtle Wax Inc.

John J. Arado, Craig S. Fochler, Michael Lee McCluggage, John Sheldon Letchinger, Ian James McPheron, Wildman, Harrold, Allen & Dixon, Max C. Fischer, Stowell & Friedman, Ltd., Chicago, IL, for Sheldon G. Adelman, Michael Turk, Brian V. Sokol and Blue Coral Inc.

Matthew Sean Elvin, Ross & Hardies, Arthur F. Radke, Dykena Gossett PLIC, Chicago, IL, Steven M. Greenspan, J. Michael Amrein, Day, Berry & Howard, Hartford, CT, for Simoniz USA, Inc. and William M. Gorra.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiffs John A. Garner ("Garner") and Steven G. Grant ("Grant") (collectively "Plaintiffs") filed a seven-count Amended Class Action Complaint ("Amended Complaint") against Defendants Denis J. Healy, Sondra Hirsch Healy, Matthew Broderick, Turtle Wax, Inc., Sheldon G. Adelman, Michael Turk, Pam Carestia, Brian V. Sokol, Blue Coral, Inc., n/k/a Blue Coral/Slick 50, Inc., Simoniz USA, Inc., f/k/a Syndet Products, Inc. and William M. Gora ("Defendants") alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), various states' (including Illinois') Consumer Fraud Acts and breach of express warranty. Plaintiffs have filed a motion for class certification seeking to certify three nationwide classes consisting of all persons who purchased products marketed, produced or distributed by Defendants as "car wax." For the reasons set forth below, this Court grants Plaintiffs' motion.

## BACKGROUND

The focus of this case is Plaintiffs' allegations that Defendants engaged in deceptive practices by fraudulently advertising, marketing and selling "non-wax products of minimal value as 'car wax'." (Pl. Mot. at 1.) According to Plaintiffs, Defendants' products were falsely described as sealer waxes, foam waxes, polish waxes, foam polishes, and protectants despite the fact that none of the products actually contain "wax." (Id. at 2.) These products are allegedly referred to as "cheater waxes" in the car wash industry because they have minimal value and do nothing to protect a car or enhance its appearance.[1]

Presently before the Court is Plaintiffs' motion for class certification. Plaintiffs seek to certify three nationwide classes consisting of all persons who purchased products marketed, produced or distributed as "car wax" by Defendants Turtle Wax (Class A), Blue Coral (Class B) and Simoniz USA (Class C), respectively. For each class, Plaintiffs seek to resolve the following "common questions of law or fact":

1. Whether Defendants had any basis for representing their products as "car wax," when none of the ingredients was a wax.

2. Whether the practices complained of constitute schemes to defraud.

3. Whether Defendants conducted or participated in the conduct of the enter-

---

1. In considering a motion for class certification, the Court accepts as true all well pleaded factual allegations. See *Hardin v. Harshbarger*, 814 F.Supp. 703, 706 (N.D.Ill.1993) ("the allegations made in support of certification are taken as true"); *Allen v. City of Chicago*, 828 F.Supp. 543, 550 (N.D.Ill.1993) (same). The Court has limited its background to the specific allegations relevant to the class certification motion. Plaintiffs' Complaint was previously the subject of an unsuccessful motion to dismiss filed by Defendants. See *Garner v. Healy*, No. 97 C 3561, 1998 WL 341811 (N.D.Ill. June 15, 1998).

prises alleged through a pattern of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

4. Whether Defendants' misrepresentations regarding their "wax" products constituted unfair and deceptive practices.

5. Whether Defendants' misrepresentations constituted a breach of express warranty.

(Pl. Mem. at 3.) In sum, Plaintiffs seek certification of their RICO, consumer fraud and express warranty claims—for classes A through C as described above.

Apart from the merits of Plaintiffs' motion for class certification, the parameters of the motion have also been the subject of heated discussion between the parties. Plaintiffs maintain that "[n]o advertisements are at issue here, only the name and marketing of the products as 'waxes' or 'protectants', [ ] through the use of misleading names like 'Turtle *Wax*,' 'Blue Coral Sealer *Wax*,' and 'Simoniz Spray Gloss *Wax*.'" (Pl. Reply at 17–18.) For their part, Defendants complaint that Plaintiffs have done an about-face with respect to which allegations of fraud they now seek to certify. Defendants protest that in their Amended Complaint, Plaintiffs refer to numerous advertisements and promotional materials as significant examples of fraud, while in their class certification motion, any allegations relating to Defendants' advertisements and promotional materials have been abandoned. (Def. Surreply at 1–2.)

The Court is puzzled as to why Defendants are so disturbed over Plaintiffs' decision to narrow their class certification motion. Despite Defendants' protests to the contrary, Plaintiffs' certification strategy was apparent in their initial certification motion. As such, nowhere in their motion do Plaintiffs make reference to advertisements or promotional materials. Plaintiffs' motion unequivocally challenges Defendants' "practice of misrepresenting the nature of their car 'wax' products" (Pl. Mem. at 8–9)—not specific representations in advertisements or promotional materials.

This Court does not believe that Plaintiffs have unfairly "amended" their Complaint or their motion for class certification.[2] Rather, the Court agrees with Plaintiffs that Defendants have misread the class certification pleadings. In any event, given the fact that Defendants have been allowed to file a "surreply" memorandum, the Court is convinced that Defendants have not been prejudiced by any belated "amendments" that have taken place.[3] Accordingly, this Court will address the merits of Plaintiffs' motion as presented.

## DISCUSSION

### I. Standards For Class Certification

Federal Rule of Civil Procedure 23(a) specifies four preliminary requirements that any proposed class must meet: "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). If the numerosity, commonality, typicality, and adequacy requirements are satisfied, then the Court must also decide whether the class qualifies under one of the three subsections of Rule 23(b).

In the instant case, Plaintiffs seek certification under Rule 23(b)(3), which authorizes class actions where the "questions of law or fact common to the members of the class predominate over any questions affecting in-

---

**2.** Even assuming arguendo that Plaintiffs had surreptitiously "amended" their Complaint, the Court can see no justification for requiring Plaintiffs to formally amend their Complaint; thereby striking the original motion for class certification and requiring another round of briefing on the certification issue. That course of action would simply require more time and money—two commodities that this Court does not want either party to spend needlessly. Defendants have had ample time and pages to respond to Plaintiffs' certification motion.

**3.** The Court finds that Plaintiffs' purported class is adequately described in their Amended Complaint for purposes of federal notice pleading.

dividual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Plaintiffs bear the burden of showing that the proposed class meets the requirements for certification. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

In evaluating a motion for class certification, the Court does not examine the merits of the case. *Id.* at 598. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997); *Retired Chicago Police Ass'n*, 7 F.3d at 596. However, because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action[,] ... it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Retired Chicago Police Ass'n*, 7 F.3d at 598 (internal quotations and citations omitted). Even if the prerequisites of Rule 23 are satisfied, until there is a decision on the merits, the Court remains free to reevaluate and modify its certification order in light of subsequent developments in the litigation. *Id.;* Fed.R.Civ.P. 23(c)(1).

Defendants oppose Plaintiffs' class certification motion, arguing that, except for numerosity and adequacy, Plaintiffs fail all of Rule 23's requirements.

## II. *Commonality and Predominance*

Rule 23(a)(2) requires that the class members share common questions of fact or law. Once Rule 23(a)(2)'s commonality requirement is met, Rule 23(b)(3) asks whether the common questions of fact or law "predominate" over issues affecting individual members. For obvious reasons, discussions of these two prerequisites often become merged as they have in this case. *See, e.g., Peterson v. H & R Block Tax Servs., Inc.*, 174 F.R.D. 78, 82 (N.D.Ill.1997). Consequently, the Court will analyze commonality and predominance together, then discuss the rest of the 23(a) requisites, and finally address the remaining aspect of Rule 23(b)(3).

### A. *Commonality*

Under Rule 23(a)(2), the party seeking class certification must demonstrate that there is at least one question of law or fact common to the class. *Lindsey v. Johnson Oldsmobile, Inc.*, No. 95 C 7306, 1997 WL 269627, at *2 (N.D.Ill. May 14, 1997). Factual variations among the class members will not defeat a class action. *Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir.1980). "A common nucleus of operative fact" is generally enough to satisfy the commonality requirement. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992) (citations omitted).

Plaintiffs maintain that "standardized conduct" is at issue in this case; namely, Defendants' marketing of their products as "wax" or "protectants" when, in fact, the products are neither. Defendants do not deny the existence of common factual issues, but instead, maintain that individual factual issues will predominate over common factual issues. Putting the predominance question to the side for the moment, the Court concludes that the 23(a)(2) requirement of commonality has been met. Indeed, courts have readily found a common nucleus of operative facts when the defendants are alleged to have directed standardized conduct toward the putative class members. *See, e.g., Peterson*, 174 F.R.D. at 82; *Chandler v. Southwest Jeep–Eagle, Inc.*, 162 F.R.D. 302, 308 (N.D.Ill.1995); *Haroco, Inc. v. American Nat. Bank & Trust Co.*, 121 F.R.D. 664, 669 (N.D.Ill.1988); *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill.1984). Here, Plaintiffs' claim that Defendants misrepresented their products as "wax" or "protectants" is the focus of every claim in the Complaint and is unquestionably common to every putative class member.

### B. *Predominance*

Defendants raise several arguments with respect to Rule 23(b)(3)'s requirement that common issues of law or fact predominate over individual issues. Specifically, Defendants claim: (1) individual issues of reliance and proximate cause predominate over any common issues of fact or law; and (2) individual issues of state law preclude certification

of a nationwide class. The Court will examine these two issues in turn.

### 1. Reliance and Proximate Cause

Defendants argue that to demonstrate violations of RICO and state consumer protection law and breaches of warranty, each class member will have to show that Defendants' alleged misrepresentations proximately caused their injuries and that they reasonably relied upon these misrepresentations. (Turtle Wax. Mem. at 7.) Plaintiffs respond by emphasizing that they are not alleging oral misrepresentations or fraud in advertisements that may not have been seen by every potential class member. Rather, they are alleging a standardized course of conduct involving uniform misrepresentations by Defendants.

In *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330 (N.D.Ill.1997), Chief Judge Aspen grappled with the identical distinction raised by Plaintiffs in this case and noted that "[w]hen the fraud was perpetrated in a uniform manner against every member of the class, such as when all plaintiffs received virtually identical written materials from the defendants, courts typically hold that individual reliance questions do not predominate." *Id.* (citing *Heastie v. Community Bank*, 125 F.R.D. 669, 675 (N.D.Ill.1989); *Smith v. MCI Telecomm. Corp.*, 124 F.R.D. 665, 679 (D.Kan.1989); *McMahon Books, Inc. v. Willow Grove Assocs.*, 108 F.R.D. 32, 38 (E.D.Pa.1985)). This Court concurs with Judge Aspen's reasoning in *Rohlfing*, and sees no reason why individual reliance questions should predominate over the alleged misrepresentations or scheme to defraud in this case.[4]

So far as the issue of proximate cause is concerned, the Court is of a similar mind. To establish proximate cause, Plaintiffs must demonstrate that their purchases occurred after the allegedly fraudulent statements were made, and that the alleged fraud "directly or indirectly" injured Plaintiffs. *See*

*Haroco, Inc. v. American Nat. Bank & Trust Co. of Chicago*, 747 F.2d 384, 398 (7th Cir. 1984) (RICO causation); *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 504, 221 Ill.Dec. 389, 675 N.E.2d 584, 595 (1997) (ICFA causation). This question will invariably turn on the "nature" or "character" of the material misrepresentation. *See Tylka*, 178 F.R.D. at 499 n. 5. In other words, if Plaintiffs paid money for a "wax," but instead received a worthless "non-wax" product, then issues of proximate cause would be relatively simple to resolve on a classwide basis. Nevertheless, if an individualized assessment of proximate cause should prove to be necessary to determine whether class members' injuries were proximately caused by Defendants' misrepresentations, those questions can be resolved— if necessary—after liability is determined and damages are being considered.

### 2. Individual State Law Issues

Defendants maintain that substantive differences in state consumer fraud law and state warranty law preclude certification of Plaintiffs' state law claims on a nationwide basis. In support of their contention, Defendants cite to *Fisher v. Bristol–Myers Squibb Co.*, 181 F.R.D. 365 (N.D.Ill.1998), where the district court noted that "serious reservations" have been expressed in various circuits—including the Seventh Circuit—about classes whose members will be governed by the *tort* law of 50 different states. *Id.* at 368 (emphasis added). The *Fisher* court explained that for this reason, class certification is "usually denied in cases involving allegedly defective pharmaceutical products." *Id.*

Still, *Fisher* and the pharmaceutical products cases cited by it involve much more complex factual and legal determinations than those in this case. The critical question here is whether Defendants have misrepresented their products to consumers. Unlike a mass tort case or a defective pharmaceutical device case, there are no "subsidiary concepts" such as duty of care, foreseeability or medical/scientific causation lurking in the

---

4. This finding is strengthened by the fact that proof of "actual reliance" on the part of each plaintiff is not required under the Illinois Consumer Fraud Act. *See Tylka v. Gerber Products Co.*, 178 F.R.D. 493, 499 n. 5 (N.D.Ill.1998) (cita-

tions omitted). Nor is individual reliance an element of a RICO claim based upon mail and wire fraud. *See Peterson*, 174 F.R.D. at 84 (citations omitted).

background here. *See In the Matter of Rhone–Poulenc Rorer, Inc.,* 51 F.3d 1293, 1300 (7th Cir.1995). This is a fairly straight-forward consumer fraud case involving what has been alleged to be standardized conduct by Defendants.

Defendants correctly point out that the *Fisher* court expressed serious reservations about certifying a nationwide class which applied 50 states' consumer fraud statutes. 181 F.R.D. at 371. Plaintiffs in this case, however, do not seek to certify a nationwide class using 50 different consumer fraud statutes. Plaintiffs have instead chosen to rely on the consumer fraud statutes in Illinois, Connecticut and Ohio (or possibly Arizona)—states where Defendants allegedly conducted their operations. Moreover, Plaintiffs are not attempting to merge the consumer fraud laws of these three states into one Esperanto consumer fraud instruction. *See In the Matter of Rhone–Poulenc Rorer,* 51 F.3d at 1300. Plaintiffs have proposed three separate classes—or sub-classes as the case may be—to handle each Defendant and the state law applicable to that Defendant.[5]

On the issue of Plaintiffs' express warranty claims, Defendants have cited to *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1016–17 (D.C.Cir.1986) (Ruth Bader Ginsburg, J.) for the proposition that differences in state warranty law should preclude nationwide certification of warranty claims. *Walsh,* however, limited its analysis to product liability claims and implied warranties. *Id.* at 1016. The court did not consider express warranty claims from the standpoint of uniform allegations of fraud under the U.C.C. § 2–313(1)(b). Additionally, Plaintiffs insist that the Court need not consider the law of 50 states because—as previously discussed—there will be, at most, only three sub-classes required to cover the states where Defendants allegedly conducted their operations.[6]

In sum, this Court is well-aware that there is no "general common law" of warranty, nor

is there an Esperanto consumer fraud instruction, merging the consumer fraud statutes of the 50 states and the District of Columbia. Nevertheless, the Court is not convinced that the substantive differences in consumer fraud law and warranty law will predominate over the fundamental question of whether Defendants misrepresented their products as "waxes" or "protectants" to consumers.

### III. *Typicality*

■ Typicality requires the named Plaintiffs to demonstrate that their claims "arise from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario,* 963 F.2d at 1018 (quoting *De La Fuente v. Stokely–Van Camp. Inc.,* 713 F.2d 225, 232 (7th Cir.1983)). The typicality requirement is "not particularly strict" and may be satisfied even where there are some factual dissimilarities between the claim of the class representative and the claims of other class members. *Tylka,* 178 F.R.D. at 500 (citing *Retired Chicago Police Ass'n,* 7 F.3d at 597). For practical purposes, typicality asks whether the named representative's claims have the same essential characteristics as the claims of the class at large. *De La Fuente,* 713 F.2d at 232.

■ Initially, Defendants claim that Garner and Grant are not typical of the class because they are not members of the class they seek to represent. Most of Defendants' arguments, however, rely upon an assumption that Plaintiffs' claims incorporate specific written misrepresentations or advertisements by each company. As discussed above, "the standardized conduct at issue is the defendants' marketing of their products as 'wax' or 'protectants' when in fact, the products are neither." (Pl. Reply at 11.) Thus, to be "typical" class members, Garner and Grant must have purchased Defendants

---

5. Questions of standing may ultimately prove Plaintiffs' certification scheme unworkable, *see infra* at 604, and the Court reminds the parties that until there is a decision on the merits, the Court remains free to reevaluate and modify its certification order.

6. While Plaintiffs have done a cursory job of explaining how they would handle any variances in state warranty law, the differences highlighted by Defendants involve little more than whether or not individual reliance must be established—an issue already addressed by the Court.

products—or paid extra money for those products—with the knowledge or expectation that they were getting a "wax" or "protectant."

The Court has reviewed Garner and Grant's depositions. While neither individual strikes this Court as being particularly knowledgeable about his legal claim, this is not the standard. Both Garner and Grant purchased one or more of Defendants' "non-wax 'wax' products," and both appear to have believed that they were getting something more than they ultimately received. (*See, e.g.,* Garner Dep. at 39, 47–48, 61–64, 70–72; Grant Dep. at 47–49, 53–54, 57, 146.) This is the essence of the claims of the class at large, and the Court finds that Garner and Grant are "typical" class members.

The next question is whether Garner and Grant are subject to any "unique" defenses that might make them "untypical" of the class at large. Defendants' primary contention is that Garner and Grant lack standing under the consumer fraud statutes in Illinois, Ohio and Connecticut because they cannot establish that they purchased Defendants' products in those states. Plaintiffs respond that "it is the behavior of the Defendants that confers standing because the statute of the state where a business formulates and conducts its illegal policies can be applied to an entire class of consumers injured by the practice, including out-of-state consumers." (Pl. Reply at 7.)

This disagreement is not subject to a simple legal resolution. Other courts in this district have grappled with the question of whether Illinois' consumer fraud statute can be invoked by non-residents where the deceptive act or practice complained of was perpetrated in Illinois. *See, e.g., Tylka v. Gerber Products Co.,* 182 F.R.D. 573, 577 (N.D.Ill.1998); *Hastings v. Fidelity Mortg. Decisions Corp.,* 984 F.Supp. 600, 615 (N.D.Ill.1997). As discussed in extensive detail by Judge Norgle, conflicting interpreta-

tions of the ICFA have caused a split of authority within this district over the application of the ICFA to consumers who are not citizens of Illinois. *Tylka,* 182 F.R.D. at 577 (citations omitted). This Court agrees with the analysis set forth in *Tylka* that "[t]o deny an out-of-state plaintiff standing to sue for a wrong in Illinois rejects the ICFA's liberal application directive, and results in an over-technical construction of the statute." *Id.* (citations omitted). Accordingly, the Court finds that with respect to standing under the ICFA, any Illinois consumers, or any non-resident consumers, who purchased the allegedly misrepresented products that were marketed in Illinois within the relevant time period have standing to sue.

Unfortunately, the road is not so well traveled when it comes to interpreting the Connecticut and Ohio consumer fraud statutes and their application to non-resident consumers. There is some case law that supports the application of both statutes to non-resident consumers. *See Brown v. Market Development, Inc.,* 41 Ohio Misc. 57, 60, 322 N.E.2d 367, 369 (Ct.Com.Pl.1974) (Ohio Act applies irrespective of the location of the consumer); *In re Boardwalk Marketplace Secs. Litig.,* 122 F.R.D. 4, 8 (D.Conn.1988) (applying Connecticut state law to out-of-state claimants where defendant partnerships were formed under Connecticut law); *Jacobs Mfg. Co. v. Sam Brown Co.,* No. 84–0887–CV–W–9, 1986 WL 7815, at *5 (CUTPA applies to "course of conduct emanating out of Connecticut which constituted unfair methods of competition"). More importantly, however, Defendants have not provided this Court with any case law that would prohibit the application of the Ohio or Connecticut consumer fraud statutes to non-resident consumers under these circumstances.[7] At this stage in the proceedings, the Court finds that Garner and Grant's claims are "typical" and that they are not subject to any "unique" defenses.

---

7. Defendants have cited to Conn. Gen. Stat § 42–110g(b), which defines when class actions are authorized in Connecticut. This statute states that class actions may only be brought on behalf of "residents" of Connecticut or persons "injured" in Connecticut. § 42–110g(b). It is unclear how to interpret this subsection given the

previous subsection which states that *"[a]ny person* who suffers any ascertainable loss of money or property" may bring an action under the CUTPA. § 42–110g(a) (emphasis added). Moreover, since this is a federal class action under Rule 23, it is questionable what, if any, affect § 42–110g(b) would have on these proceedings.

## IV. *Superiority*

 The final requirement imposed on class proponents by Rule 23(b)(3) is a showing that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). This subsection provides a non-exhaustive list of four factors for courts to consider in this assessment: the interest of each member in conducting the litigation individually; whether other actions growing out of the same controversy and involving the same parties have been filed; the desirability of concentrating the litigation in one forum; and the manageability of a class action. Defendants challenge only the class action's manageability based on the premise that there will be extensive individualized proceedings required to determine causation, standing, and issues of state consumer fraud and express warranty law. (Turtle Wax Mem. at 15.) This Court has already determined, however, that such individualized inquiries will be unnecessary for the most part. Moreover, the remaining three considerations weigh heavily in favor of a class action.

First, the class members lack financial incentives to litigate this suit individually. The products at issue in this case are relatively low cost items and the modest possible recovery for each individual plaintiff would be dwarfed by individual litigation costs. This is clearly an instance where "the amounts at stake for individuals may be so small that separate suits would be impracticable." *Amchem Prods., Inc.*, 521 U.S. 591, 117 S.Ct. at 2246. Second, consolidating all of these claims in one forum is desirable because all are based on the same alleged fraudulent misrepresentations that were directed toward a large number consumers. Finally there is no evidence that any other actions involving this controversy and these parties have been filed elsewhere.

### CONCLUSION

As described at length in this opinion, there are still several issues to be resolved

concerning the appropriate state law applicable to Plaintiffs' claims and how that law should be applied in the class context. While Plaintiffs envision three classes (A–C) and, at most, several subclasses, this scheme may ultimately prove to be unworkable as the specifics of a class trial become discernible. The Court will address choice of law issues again when and if it becomes necessary—e.g., on motions for summary judgment.[8]

For the foregoing reasons, the Court grants Plaintiffs' motion for class certification.

---

8. The choice of law question may become moot if, for example, Defendants were to seek summary judgment on Plaintiffs' lone federal claim—RICO. Alternatively, choice of law questions may be irrelevant in a summary judgment motion based upon a common element of consumer fraud statutes, e.g., lack of a "false or misleading statement."