**In re SYNTHROID MARKETING LITIGATION.**

No. 97 C 6017.
MDL No. 1182.

United States District Court,
N.D. Illinois,
Eastern Division.

July 19, 1999.

Marvin Alan Miller, Miller, Faucher, Cafferty and Wexler, L.L.P., Chicago, IL, Duane C. Quaini, Christopher Qualley King, John Claiborne Koski, Erika K. Powers, Sonnenschein, Nath & Rosenthal, Chicago, IL, Michael D. Hausfeld, Lisa M Messetti, Cohen, Milstein, Hausfield & Toll, Washington, DC, Lawrence W. Schonbrun, Attorney, Berkeley, CA, for plaintiffs.

Howard Brian Prossnitz, Law Offices of Howard Prossnitz, Chicago, IL, for Julianne Rausch.

Lowell E. Sachnoff, Sachnoff & Weaver, Ltd., Chicago, IL, for Sandora Davila, Richard Saenz.

Scott Rhead Shepherd, Shepherd & Geller, LLC, Media, PA, for Mae Fischer.

Gary D. McCallister, Gary D. McCallister & Associates, Ltd., Chicago, IL, for Blue Cross and Blue Shield of Alabama, Louisiana Health Service & Indemnity Company dba Blue Cross and Blue Shield of Louisiana, Alabama Medicaid Agency, State of Louisiana, Department of Health and Hospitals, The, on behalf of themselves and others similarly situated, plaintiffs.

Lynde Selden, II, Selden Law Firm, San Diego, CA, Theodore J Holt, Hackard, Holt & Heller, Gold River, CA, Richard H Rosenthal, Law Offices of Richard H. Rosenthal, A Professional Corporation, Carmel Valley, CA, for Rosalie Lynch.

Lynde Selden, II, Selden Law Firm, San Diego, CA, Theodore J. Holt, Hackard, Holt & Heller, Gold River, CA, for Jeanette C Miller.

Theodore J. Holt, Hackard, Holt & Heller, Gold River, CA, Richard H. Rosenthal, Law Offices of Richard H. Rosenthal, A Professional Corporation, Carmel Valley, CA, for Gordon Fjeld.

James L. Johnson, Johnson Law Firm, Dallas, TX, for Cigna Healthcare.

Elizabeth Leigh Thompson, Lindley J. Brenza, Bartlit, Beck, Herman, Palenchar & Scott, Chicago, IL, Joseph C Kohn, Joanne Zack, Douglas A Abrahams, Kohn, Swift & Graf, P.C., Philadelphia, PA, Gregory P Hansel, Preti, Flaherty, Beliveau, Pachios & Haley, L.L.C., Portland, ME, for Aetna U.S. Healthcare, Inc., Aetna Life Insurance Co, Corporate Health Insurance Company.

James F Flug, Duncan, Weinberg, Miller & Penbroke, P.C., Washington, DC, for State of Michigan.

Michael D. Monico, Monico, Pavich & Spevack, Chicago, IL, James W Bergenn, Theodore M Space, Ross Garber, Shipman & Goodwin LLP, Hartford, CT, Mark D Fischer, Rawlings & Associates, Louisville, KY, for Blue Cross and Blue Shield of New Jersey, Inc.

Delilah Brummet, Attorney at Law, Chicago, IL, Tyrone C. Fahner, Diane Julia Romza–Kutz, Diane Green Smith, Kenneth J. Merlino, Mayer, Brown & Platt, Chicago, IL, Duane C. Quaini, Christopher Qualley King, Sonnenschein, Nath & Rosenthal, Chicago, IL, Terrence A. Callan, Mary B. Cranston, Roxane A Polidora, Saul D Bercovitch, Pillsbury, Madison and Sutro, San Francisco, CA, for BASF Corporation.

Delilah Brummet, Attorney at Law, Chicago, IL, Tyrone C. Fahner, Diane Julia Romza–Kutz, Diane Green Smith, Kenneth J. Merlino, Mayer, Brown & Platt, Chicago, IL, Duane C. Quaini, Christopher Qualley King, Sonnenschein, Nath & Rosenthal, Chicago, IL, Terrence A. Callan, Mary B. Cranston, Roxane A Polidora, Saul D Bercovitch, Pillsbury, Madison and Sutro, San Francisco, CA, Richard L Josephson, Travis James Sales, Baker & Botts, L.L.P., Houston, TX, for Knoll Pharmaceutical Company.

Terrence A. Callan, Mary B. Cranston, Roxane A Polidora, Saul D Bercovitch, Pillsbury, Madison and Sutro, San Francisco, CA, for Neil Kurtz, Carter H Eckert, Gilbert H Mayor.

Michael D. Monico, Barry A. Spevack, Monico, Pavich & Spevack, Chicago, IL, Terrence A. Callan, Mary B. Cranston, Roxane A Polidora, Saul D Bercovitch, Pillsbury, Madison and Sutro, San Francisco, CA, for Boots Pharmaceuticals.

Charles Gilbert Fergus, Illinois Attorney General's, Chicago, IL, Rebecca Desiree Ward, Hopkins & Sutter, P.C., Chicago, IL, Terrence A. Callan, Mary B. Cranston, Roxane A Polidora, Saul D Bercovitch, Pillsbury, Madison and Sutro, San Francisco, CA, Sandra S. Paguaga, Illinois Attorney General's, Chicago, IL, Randall L. Mitchell, James Dominick Adducci, Marshall Lee Blankenship, Adducci, Dorf, Lehner, Mitchell & Blankenship, P.C., Chicago, IL, for Flint Laboratories.

Terrence A. Callan, Mary B. Cranston, Roxane A Polidora, Saul D Bercovitch, Pillsbury, Madison and Sutro, San Francisco, CA, for Boots–Flint Inc, BA Buhler.

John Robert Sears, Missouri Attorney General, Jefferson City, MO, for State of Missouri.

John B Howard, Jr, Office of the Attorney General of Maryland, Baltimore, MD, for State of Maryland.

## *MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

The plaintiffs filed a master consumer class action complaint against defendants Knoll Pharmaceutical Co., BASF Corporation, The Boots Company PLC, and individual defendants alleging federal and state claims relating to the marketing and sale of the drug Synthroid. The plaintiffs move to certify a class of consumers in the United States who purchased Synthroid from January 1, 1990 to the present time.[1] For the following reasons, the motion for class certification is granted.

---

1. Although the complaint describes the class as including purchasers in Puerto Rico, the motion for class certification includes only purchasers in the United States. A separate complaint addressed by the defendants in their response memorandum, brought on behalf of purchasers in Puerto Rico and transferred to this court as part of the MDL proceedings, is not before the court at this time.

## Background

Synthroid is the brand name for a synthetic thyroid medication containing levothyroxine. The plaintiffs allege that the defendants concealed medical information including a study showing that other preparations of levothyroxine are bioequivalent to Synthroid, and that the defendants falsely represented that other levothyroxine drugs are not bioequivalent to Synthroid. Consequently, patients took Synthroid rather than less expensive, bioequivalent substitutes. In addition, patients paid more for Synthroid than they would have if the defendants had not suppressed the medical information and made the false representations.

The master consumer class action complaint was filed by the plaintiffs after the Judicial Panel on Multidistrict Litigation transferred numerous cases involving Synthroid to this court for consolidated pretrial proceedings. The master complaint alleges violations of the Sherman Antitrust Act, 15 U.S.C. § 2 et seq., the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ["RICO"], various state consumer protection statutes including the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ["ICFA"], and the common law. The plaintiffs are not moving for class certification on their damages claim under the Sherman Antitrust Act or their common law claims.

## Class Certification

■ Pursuant to Fed.R.Civ.P. 23(a), a proposed class must meet four preliminary requirements: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." In addition, the proposed class must meet one of the requirements set forth in Fed.R.Civ.P. 23(b). The plaintiffs seek certification under Rule 23(b)(3), which authorizes class actions where "questions of law or fact common to the members of the class predom-

inate over any questions affecting individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The burden is on the plaintiffs to show that the proposed class is appropriate for certification. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993).

■ When evaluating a motion for class certification, a court should not examine the merits of the case. *Id.* at 598. Until there is a decision on the merits, the court may reevaluate and modify class certification in light of subsequent developments. Fed.R.Civ.P. 23(c)(1).

### A. Rule 23(a)

#### 1. Numerosity

■ Rule 23(a)(1) requires that a class is so numerous that joinder is impracticable. According to the complaint, millions of people have purchased Synthroid in the United States since 1990. Therefore the numerosity requirement is met.

#### 2. Commonality

■ Rule 23(a)(2) requires that questions of law or fact are common to the class. Common factual and legal questions in the case at bar include whether the defendants intentionally suppressed scientific information, including a study, showing that Synthroid is bioequivalent to other drugs used to treat thyroid disorders, whether the defendants made uniform, public misrepresentations that other preparations of levothyroxine are not bioequivalent to Synthroid, whether and when the defendants learned that other drugs were bioequivalent to Synthroid, whether the defendants' conduct constitutes fraudulent concealment and misrepresentation of material information, and whether the defendants' conduct violated federal and state law. The plaintiffs have alleged that the defendants directed standardized conduct toward the potential class members, and "courts have readily found a common nucleus of operative facts" in such situations. *Garner v. Healy*, 184 F.R.D. 598, 601 (N.D.Ill. 1999) (collecting cases). Putting aside the question of whether individual issues pre-

dominate over these common issues, which will be addressed with regard to Rule 23(b), plaintiffs' allegations are sufficient to meet the commonality requirement in Rule 23(a)(2).

### 3. Typicality

■ Rule 23(a)(3) requires that the claims or defenses of the class representatives are typical of the class. Plaintiffs meet the typicality requirement if their cause of action "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [the] claims are based on the same legal theory.... [Typicality] may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983) (citations and quotations omitted). The defendants do not dispute that the allegations regarding the defendants' course of conduct apply to all putative class members. Instead, they argue that the class representatives are not typical of the class because all four of the representatives have switched from using Synthroid to using a different drug containing levothyroxine. Several plaintiffs who are not class representatives, and other absent members of the class, continue to take Synthroid.

The gravamen of the complaint is that the plaintiffs suffered economic harm when the defendants suppressed information and made misrepresentations regarding the bioequivalency of Synthroid and other drugs. Thus, although the nature of their economic harm differs, all plaintiffs are alleged to have been injured by the same course of conduct by the defendants. To prove their claims, all members of the putative class would need to show that the defendants engaged in the same wrongful conduct. The interests of the class representatives and the absentee members are therefore sufficiently aligned.

### 4. Adequacy of Representation

■ Pursuant to Rule 23(a)(4), the class representatives must fairly and adequately protect the class interests. The class representatives in the case at bar, like all of the members in the putative class, have claims for economic damages allegedly caused by the same conduct by the defendants. The class representatives do not appear to have interests antagonistic to the class, and they have sufficient interest in the outcome to litigate the case vigorously. In addition, plaintiffs' counsel have provided an extensive list of qualifications that are not challenged by the defendants. Therefore the adequacy of representation requirement is satisfied.

### B. Rule 23(b)(3)

Rule 23(b)(3) requires both that common issues of law or ,fact predominate over individual issues, and that a class action is the superior method of adjudication.

### 1. Predominance

■ The defendants argue that individualized issues relating to causation and damages predominate over common issues and preclude class certification. According to the defendants, individual issues predominate because, to prove their claims, the plaintiffs must make "individualized inquiries into the decisions of consumers, physicians and pharmacists to purchase, prescribe and dispense Synthroid...." (Def.Mem. at 23). The defendants further argue that because plaintiffs did not buy Synthroid directly from them, damages must be calculated on an individual basis "considering all of the highly variable factors affecting the prices paid by the wholesalers and retailers from whom the consumers purchased Synthroid, as well as the health care benefits available to the consumer when the purchase was made." (Def.Mem. at 38).

The defendants devote a substantial portion of their response memorandum to analyzing the chain of distribution and each decision that must be made regarding Synthroid along the way. The plaintiffs, however, allege standardized conduct by the defendants involving suppression of medical information, including a study, and misrepresentations regarding the bioequivalency of Synthroid and other levothyroxine drugs. They do not allege that the defendants gave individualized information to some plaintiffs but not others. It is true that the complaint alleges that the

defendants' wrongful conduct included misrepresentations in the form of advertisements and other public statements, and that many courts have been unwilling to certify classes with claims based substantially on oral communications. *See, e.g., Retired Chicago Police Ass'n*, 7 F.3d at 597 n. 17 (noting that there is some authority that such class actions are inappropriate). The conduct alleged by the plaintiffs, however, is characterized primarily as the suppression of medical information and studies, in other words, as a scheme to conceal material information. In light of these allegations of uniform conduct, that some of the conduct may involve misrepresentations in the form of advertisements and public statements is not enough to defeat class certification. In addition, the complaint alleges that such misrepresentations were also uniform. *See id.* (collecting authority that claims based substantially on oral communications are inappropriate for class treatment "unless the communications are shown to be standardized").

The question of liability, therefore, will turn on whether the defendants engaged in the alleged conduct, consisting primarily of the uniform suppression of material information, not on the individual decisions and circumstances of countless people along the chain of distribution of Synthroid. Proximate cause is established by demonstrating that "purchases occurred after the allegedly fraudulent statements were made, and that the alleged fraud 'directly or indirectly' injured Plaintiffs." *Garner*, 184 F.R.D. at 602. Individual reliance is not an element of a claim under the ICFA or a claim under RICO that is predicated on acts of mail and wire fraud, as are the plaintiffs' claims. *See Cannon v. Nationwide Acceptance Corp.*, 1997 WL 779086, at *3 (N.D.Ill.1997) (collecting cases). In addition, a RICO claim based on mail and wire fraud "focuses on the defendant's conduct in devising or intending to devise a scheme to defraud, not the individual experiences of each defrauded person." *Peterson v. H & R Block Tax Servs., Inc.*, 174 F.R.D. 78, 84 (N.D.Ill.1997). In any case, "it is well-established that individual issues of reliance do not thwart class actions." *Id.* at 84.

The defendants also point to cases denying class certification for indirect purchasers in brand name prescription drug antitrust litigation. The plaintiffs in the case at bar, however, are not requesting class certification on an antitrust damages claim, and thus are not concerned with proving the amount of damages. In addition, the cases involving the brand name prescription drug antitrust litigation alleged a conspiracy by numerous manufacturers involving numerous prescription drugs. *In re Brand Name Prescription Drugs Antitrust Litig.*, 1994 WL 663590, at *1 (N.D.Ill.1994). The case at bar involves one manufacturer and one drug. The defendants also rely heavily on two cases from this district denying class certification, *Dhamer v. Bristol–Myers Squibb Co.*, 183 F.R.D. 520 (N.D.Ill.1998), and *Fisher v. Bristol–Meyers Squibb Co.*, 181 F.R.D. 365 (N.D.Ill.1998). However, there are not individual health issues that must be resolved with regard to every Synthroid plaintiff, as there were in *Dhamer*, 183 F.R.D. at 530 (noting that plaintiffs acknowledged a significant individual issue was whether a particular class member was addicted to the prescription drug), and *Fisher*, 181 F.R.D. at 370 ("even to qualify for membership in the proposed class every plaintiff will need to establish that he or she was in fact addicted to [the prescription drug]"). In addition, the plaintiffs in the case at bar are suing only for economic damages, not personal injury.

On the issue of injury, the plaintiffs theorize that because the defendants intentionally suppressed medical information including the study showing that Synthroid was bioequivalent to other medications, and intentionally misrepresented facts about bioequivalency, the purported class was injured in two ways. First, if the defendants had not engaged in such conduct, more class members would have switched from Synthroid to less expensive products. Second, if the defendants had not engaged in such conduct, class members would have paid less for Synthroid because defendants would not have been able to maintain an artificially high price spread between Synthroid and other brands. The defendant's expert, Ernst R. Berndt, vigorously disagrees with the plaintiffs' theories for var-

ious reasons.[2] Federal courts, however, "have consistently and firmly adhered to the principle that once liability has been demonstrated, complexity or uncertainty as to the amount of damages will not preclude recovery." *In re Folding Carton Antitrust Litig.*, 75 F.R.D. 727, 735 (N.D.Ill.1977). The defendants acknowledge that Synthroid's market share fell after the study that they allegedly suppressed was eventually published, and they argue that at the appropriate time, they will explain that any decrease was caused by other factors. They also argue that the empirical evidence proves the study was insignificant.

The defendants correctly recognize that now is not the time to take up a battle of damages theories. In addition, with regard to questions involving health provider issues, third party payers have intervened in this lawsuit. Furthermore, if an individualized determination of proximate cause or damages becomes necessary, such questions can be resolved after the liability issue is decided, if necessary with creation of subclasses and reference to a magistrate judge. *See, e.g., Garner*, 184 F.R.D. at 602 ("if an individualized assessment of proximate cause should prove to be necessary . . . those questions can be resolved—if necessary—after liability is determined and damages are being considered"); *Johnson v. Aronson Furniture Co.*, 1998 WL 641342, at *8 (N.D.Ill.1998) ("individualized questions of injury may be resolved after the determination of the common questions"). The plaintiffs have set forth theories on the question of common injury, and the predominate questions in this lawsuit involve the defendants' alleged scheme to suppress medical information and make misrepresentations about the bioequivalency of Synthroid and other drugs.[3] The plaintiffs have accordingly met the requirements of the first prong of Rule 23(b)(3).

## 2. Superiority

Rule 23(b)(3) also requires that a class action is superior to other methods of adjudicating the controversy. A court should consider four factors when making this determination: 1) the interest of each class member in litigating their claims individually; 2) whether other actions arising from the same controversy have been filed; 3) the desirability of concentrating the litigation in one forum; and 4) the manageability of the class action. Fed.R.Civ.P. 23(b)(3). The defendants challenge the manageability of a national class bringing claims under numerous state consumer laws.

■ According to the defendants, the substantive differences in state consumer protection statutes preclude national certification of the plaintiffs' state law claims. Courts have noted that " 'serious reservations' have been expressed in various circuits—including the Seventh Circuit—about classes whose members will be governed by the tort law of 50 different states." *Garner*, 184 F.R.D. at 602 (quoting *Fisher*, 181 F.R.D. at 368). Although the plaintiffs believe that a class action brought under 50 state statutes would be manageable, they argue that the state law claims can be brought under the law of Illinois, New Jersey, or California. The plaintiffs allege that the defendants have engaged in their course of conduct in all three of these states, creating significant contacts and state interests. In addition, the plaintiffs argue that their injuries are economic rather than personal, and that under a "most significant contacts" rule are tied to the states in which the defendants engaged in their scheme. If the plaintiffs are correct and the law of one of these states could be applied to this proceeding, the defendants' arguments regarding manageability would be moot. The de-

---

**2.** I note that defendants apparently have not turned over Berndt's unredacted report. They should have done so prior to his deposition. The unredacted report shall be provided to plaintiffs within seven days.

**3.** As is noted in *Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540, 545 (D.N.J.1999), "[t]hat common issues must be shown to 'predominate' does not mean that individual issue[s] need be nonexistent. All class members need not be

identically situated upon all issues, so long as their claims are not in conflict with each other" (citation and quotations omitted). Plaintiffs' allegations in the case at bar point to "a common course of conduct that leads to injury of all the class members." *Toney v. Rosewood Care Ctr., Inc. of Joliet*, 1999 WL 199249, at *9 (N.D.Ill. 1999) (quoting *McDonald v. Prudential Ins. Co. of Am.*, 1999 WL 102796, at *2 (N.D.Ill.1999)).

fendants argue, however, that applying the law of these states would eliminate requirements for standing and violate their due process rights.

It is impossible at this stage of the proceeding, relying only on allegations in the class certification briefs, to resolve the choice of law issues. Many courts decline to make a choice of law determination at the class certification stage. *See, e.g., Hickey v. Great Western Mortgage Corp.,* 158 F.R.D. 603, 612 (N.D.Ill.1994) ("The court is unable to decide [the choice of law] issue on a motion for class certification.... Nothing in the record addresses with specificity the contacts that various states might have to this litigation"); *Elliott v. ITT Corp.,* 150 F.R.D. 569, 579 (N.D.Ill.1992) (collecting cases and finding that "the potential application of different state laws is not in itself a deterrent to class certification"). According to the complaint, two of the named class representatives are from Florida and one is from Texas. The residency of Mary M. Abeyta is not alleged. Although standing issues ultimately may require decertification of the state law counts, at this point it is mere speculation that the application of numerous state laws would be necessary, rendering the class action unmanageable.[4] "In short, speculation that choice-of-law problems may defeat the predominance of common issues later is insufficient to avoid certification now." *Hickey,* 158 F.R.D. at 613. Class certification orders are, of course, modifiable until there is a decision on the merits.

Moreover, a class action is the superior form of adjudicating this controversy for several reasons. First, consumers have little interest in litigating their claims individually because of the small amount of money per plaintiff that is at stake. According to other complaints in the MDL proceeding, the retail price of Synthroid is only about $120.00 for one year. Second, as demonstrated by the numerous cases transferred to this court for consolidated pretrial proceedings, plaintiffs across the country have filed actions based on the defendants' alleged conduct. While

the number of cases filed is minimal in comparison with the millions of Synthroid purchasers, evidencing the small incentive to litigate, the number is large enough to consume a great amount of judicial resources. Third, consolidation of these claims is desirable because the claims are based on the same, alleged uniform conduct of the defendants. Therefore a class action is the superior method of adjudicating this controversy.

*Conclusion*

For the reasons discussed above, the plaintiffs' motion to certify a class of consumers in the United States who purchased Synthroid between January 1, 1990 and the present time is granted.

---

4. It is also possible that consumer fraud statutes in states other than Illinois would require resolution of individual issues that would render the

claims inappropriate for class treatment on a national level.